Gordon Powell HAYES, Jr., Appellant,

v.

Faye Bermudez HAYES, Appellee.

No. S–1924.

Supreme Court of Alaska.

June 17, 1988.

Sandra K. Saville and David Gorman, Kay, Saville, Coffey, Hopwood & Schmid, Anchorage, for appellant.

John Reese and Sharon L. Gleason, Reese, Rice and Volland, P.C., Anchorage, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Chief Justice.

In this divorce case, the issues on appeal concern the division of marital property. Our task on review has been made needlessly difficult by the failure of the parties to set out in a comprehensive and easily understandable fashion the assets and liabilities of the parties and how they were divided. Based on our understanding of the briefs and the record, we have compiled the details of the property division decreed by the trial court.[1] We set it out here:

| Property | Net Value | |
|---|---|---|
| | Wife | Husband |
| Bank of Washington Stock [2] | $ 2,850 | $ –0– |
| Triken Limited Partnership [3] | ?[50%] | ?[50%] |
| Profit Sharing Plan | 11,000 | 11,000 |
| Blakely Island Property | 69,000 | –0– |

1. This chart is assembled from information in the trial court's order.

2. The value assigned for purposes of this chart is midway between the range of values found by the trial court.

3. The value of this property was not ascertained at trial.

| Property | Net Value | |
| --- | --- | --- |
| | Wife | Husband |
| Bellingham House 4 | –0– | 22,000 |
| Mat–Su Property | 22,000 | –0– |
| Anchorage Home | 63,900 | –0– |
| Skagit Property 5 | 137,500 | 137,500 |
| Subaru | 5,000 | –0– |
| Porsche and Mercedes | –0– | 32,500 |
| Quality Asphalt | –0– | 1,000,000 |
| Note Payable to wife | 500,000 | –500,000 |
| Debt to Quality Asphalt | –0– | –68,000 |
| TOTAL 6 | $811,250 | $ 635,000 |
| | 56.1% | 43.9% |

## I. VALUATION OF THE BUSINESS

The major asset of the parties is a one-half interest in Quality Asphalt Paving, Inc. The trial court valued this interest at one million dollars, and did not allow a minority discount.[7] The husband was awarded all of the stock in Quality Asphalt, and was required to pay the wife $500,000 over a ten year period, payable at $4,375 per month. A minimum of 5% of the remaining principal must be paid each year. Interest on the unpaid balance is ten and one-half percent. The appellant (husband) contends that the trial court's valuation of the business was clearly erroneous.

Only two witnesses expressed an opinion as to the value of the business. The husband opined that it was worth between $625,000 and $650,000. An expert appraiser, Dahe Good, hired by the husband with the concurrence of the wife, expressed her view that the business was worth $850,000.

 The trial court stated in supplemental findings that it reached the million dollar valuation based on the amount of life insurance purchased by each stockholder to allow the surviving stockholder to purchase the interest of the deceased stockholder. The trial court found that the amount of insurance each purchased was one million dollars. This is an inadequate basis for valuing the business. Neither shareholder has any particular incentive to agree to the actual value of the business in an insurance funded buy-out agreement.[8] Further, there was no evidence as to when the agreement was made, and the only mention of the agreement we have found in the record on appeal is the testimony of the husband who was uncertain as to whether the agreement was for one million or for one million five hundred thousand dollars worth of life insurance.

The wife defends the trial court's finding on a different basis. She argues that the court could have employed the capitalization of net earnings method, mentioned but almost entirely rejected by Good, and could also have declined to utilize any minority discount. Good's report sets out two valuation methodologies, capitalization of net earnings and net worth of tangible assets. Using the capitalization of net earnings method, the Hayes' interest was calculated to be worth $1,085,000; after applying the 15% minority discount employed by Good, their interest was $922,250. Under the tangible net asset method, the Hayes' interest figures at $995,346; after the discount is applied, their interest is $846,044.

Good concluded that $850,000 was the fair market value. She declined to give significant weight to the capitalization of net earnings method due to present declining market conditions, characterizing the method as "subjective" in the present case because of the lack of data to back up the selection of the 3.5 multiplier which she picked.

No one, other than Good, testified as to which valuation method was preferable. The trial court therefore would have had no evidentiary basis for selecting the method which Good had rejected.

4. *See* footnote 2.

5. *See* footnote 2.

6. The total does not include the value of the Triken limited partnership, which is to be evenly split. This will bring the total percentages closer together.

7. A minority discount is a reduction in the value of the stock of a party who has a minority interest in a closely held corporation on the theory that the party lacks the voting power to control decisions. *See generally* R. Longnecker, *A Practical Guide to Valuation of Closely–Held Stock* 122 Trusts & Estates 32, 38 (Jan. 1983).

8. "Clearly, the valuation method in case of the death of a stockholder would not be appropriate because it provided a premium value for the stocks rather than the true value." *In re Marriage of Morris,* 588 S.W.2d 39, 44 (Mo.App. 1979).

■ With respect to the utilization of a minority discount, Good determined that a 15% discount was appropriate. Another witness called by the husband, Joseph Whitlock, expressed the view that a discount in the range of 20–40% should have been employed. A third witness, Theodore Sherwin, called by the wife, testified that no minority discount was appropriate in a divorce settlement context because generally there is no change of ownership.

We reject Sherwin's view as a matter of law. The concept of value is keyed to the price that a prospective buyer would pay. *Moffitt v. Moffitt*, 749 P.2d 343, 347 (Alaska 1988). Sherwin's testimony runs counter to this concept. We also note that courts in many jurisdictions have recognized that a minority discount is frequently appropriate in divorce proceedings. *See Arneson v. Arneson*, 120 Wis.2d 236, 355 N.W.2d 16, 22 (App.1984) (not clearly erroneous for trial court to apply minority discount); *In re Marriage of Jorgensen*, 180 Mont. 294, 590 P.2d 606, 610 (1979) (not an abuse of discretion to apply minority discount); *In re Marriage of Belt*, 65 Or.App. 606, 672 P.2d 1205, 1207–08 (1983) (trial court's valuation modified to include minority discount where the only credible evidence produced at trial favored discount); *In re Marriage of Reiling*, 66 Or.App. 284, 673 P.2d 1360, 1364, 1365 (1983) (same); *In re Marriage of Hoak*, 364 N.W.2d 185, 192–93 (Iowa 1985) (not error to apply minority discount, but discount allowed by the trial court was too large and must be reduced); *Bowen v. Bowen*, 96 N.J. 36, 473 A.2d 73, 76–77, 81 (1984) (trial court should appoint independent expert to advise it in deciding whether to apply minority discount).

Based on the foregoing, we conclude that the trial court's determination that the Hayes' interest in Quality Asphalt was worth $1,000,000.00 is clearly erroneous.

## II. WAS AN INEQUITABLY LARGE SHARE OF THE MARITAL ESTATE AWARDED TO THE WIFE?

■ The husband's second point is that too great a share of the available marital property was awarded to the wife. As indicated at the outset of this opinion, the respective shares received by the parties appear to have been approximately 56% to the wife and 44% to the husband. While a 50/50 division of marital property is presumptively just, an unequal division can be condoned when it is justified by relevant factors identified in the findings of the court. *Wanberg v. Wanberg*, 664 P.2d 568, 574–75 (Alaska 1983). In the present case, the trial court's findings make a persuasive case that the unequal division is warranted because of the wife's future need for income during a period when she will be pursuing an advanced professional degree. We find no abuse of discretion on this point.

## III. ARE THE MONTHLY PAYMENTS IMPOSED ON THE HUSBAND UNREASONABLE?

■ The husband argues that under the decree his annual recurrent payments include:

| | |
|---|---|
| Note to wife | $ 73,495 |
| Real property note | 14,400 |
| Education for children | 30,000 |
| Bellingham mortgage and taxes (wife's home) | 24,000 |
| TOTAL | $141,895 |

He contrasts this with his annual salary of $120,000 from Quality Asphalt. Here, as in *Brooks v. Brooks*, 677 P.2d 1230, 1235 (Alaska 1984), we find the imposition of these payments to be problematic in view of the husband's projected income. *See also Groff v. Groff*, 408 P.2d 998, 1001 (Alaska 1965) (disapproving a decree requiring appellant to pay $1,025 when his net monthly income was $1,012); *cf. Allen v. Allen*, 554 P.2d 393 (Alaska 1976) (appellant could lessen the burden of high payments imposed by a decree by reorganizing financially, presumably without undue hardship). Since this case must be remanded to revalue the parties' interest in Quality Asphalt, and to make such adjustments as the court finds warranted, it should suffice to direct the court to address this problem. Either appropriate adjustments should be made, or findings should be entered to the effect that alternative means

are available to the husband to meet his obligations.

## IV. CONCLUSION

The decree is VACATED and this case is REMANDED with instructions to revalue the parties' interest in Quality Asphalt and to make such other adjustments in the property division as may be warranted by this change and by the discussion set forth in part III of this opinion.