Larry A. BARNES, Appellant,

v.

Ramona L. BARNES, Appellee.

No. S–3827.

Supreme Court of Alaska.

July 26, 1991.

Rehearing Denied Aug. 23, 1991.

Robert C. Erwin, Erwin & Smith, Anchorage, for appellant.

Robert D. Frenz, Anchorage, for appellee.

Before RABINOWITZ, C.J., and MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

### I.

In this divorce case, the trial court entered a final decree dividing the property of the parties on April 14, 1989. The court made a "substantially equal division" of a marital estate having a net value of approximately $369,000, awarding approximately $195,000 to Ramona Barnes and approximately $174,000 to Larry Barnes. Included in Ramona's share of the award was Larry's deferred income account as of

February 1, 1988, with his employer, the Municipality of Anchorage. This was valued at $82,000. All parties and the court believed that this account could be transferred to Ramona.

This assumption proved to be mistaken. On July 17, 1989, the Office of the Municipal Attorney for the Municipality of Anchorage wrote Ramona's attorney, stating that the deferred income account could not be transferred to Ramona. According to the letter, the funds in the account could not be made available even to Larry until he attained the age of 70½,[1] stopped working for the Municipality, or was "faced with an unforeseeable emergency." Concerning the last event, the letter stated:

[T]he participant may withdraw funds under the plan if financial hardship is shown. Neither the order nor the final judgment in the case require Mr. Barnes to pay the sum of $82,000 to Ramona Barnes at any particular time. It would appear to be difficult to establish current financial hardship unless Mr. Barnes has been ordered to pay that amount of money in the near future.

In the meantime, Ramona had filed a notice of appeal from the final divorce judgment. She also moved in this court to stay preparation of the record on appeal "pending resolution of several matters concerning the case in the Superior Court," referring specifically to "certain deferred compensation funds held by the Municipality of Anchorage." Her motion was granted on August 3, 1989. We granted a 60-day stay and "temporarily remanded" the case "to the superior court to allow for resolution of the issue of distribution of certain deferred compensation funds."

On September 22, 1989, Ramona made a motion to modify the final judgment pursuant to Civil Rule 60(b), requesting, among other things, that she be awarded a money judgment against Larry in the sum of $82,000 plus accrued interest from February 1, 1988. In support of this motion, Ramona referred to the Municipality's position concerning the terms under which the deferred income account could be distributed to Lar-

---

1. At the time, Larry was 51 years of age.

ry. She stated: "The entry of this judgment will force Mr. Barnes to pay the $82,000.00 plus interest for which he can apply to the Municipality on the grounds of hardship to have the funds released to Mrs. Barnes."

On September 29, 1989, Larry also moved to modify the final divorce judgment to include certain new assets and correct the judgment in two respects: 1) to reflect that he was in the military service for seven years before he was married to Ramona and therefore that part of his military pension which was attributable to those years should not have been counted as marital property; and 2) to correct a clerical error in a qualified domestic relations order that was issued subsequent to the divorce. Each party opposed the other's Rule 60(b) motion.

We extended the 60–day order of remand on October 31, 1989, "pending a decision of the superior court." On the same day, the superior court held oral arguments on the motions to amend the final judgment.

At oral argument, Ramona's counsel requested that "the Court either ... enter a judgment against Mr. Barnes in the amount of ... $82,000.00 plus accumulated interest to essentially constitute a hardship to jar the funds loose from the Municipality" or make a more comprehensive redivision of the parties' assets. In response, counsel for Larry argued that under the terms of the remand from this court, the trial court lacked jurisdiction to grant any relief other than that pertaining directly to the deferred income account. The trial court agreed with this argument and ruled that it would enter an amended judgment relating only to the problem created by the non-transferability of the $82,000 account. On this basis, the court denied Larry's Rule 60(b) motion and the other relief sought by Ramona.

Subsequently, the court entered an order requiring Larry to pay Ramona the sum of $82,000 plus all earnings on the $82,000 in the deferred income account from Febru-

ary 1, 1988, until the date of the order, January 12, 1990.[2] From this order, Larry has appealed. Ramona has dismissed her appeal from the original judgment.

## II.

Larry's first point on appeal is that the trial court had no jurisdiction to grant Ramona's Rule 60(b) motion "without a specific remand of the issue from the Alaska Supreme Court for that purpose." In support of his position Larry makes two arguments. He argues first that the oral argument was held after the 60–day stay entered by this court had expired and "no attempt was made to continue the stay or to broaden the scope of the order." This argument is factually incorrect as Ramona sought and had obtained an extension of the stay.

Larry's second argument is that the procedure for seeking relief under Civil Rule 60(b) after a case is on appeal, outlined in *Duriron Co. v. Bakke*, 431 P.2d 499, 500 (Alaska 1967), was not followed. In *Duriron* we held that a party may move for Rule 60(b) relief in the superior court while an appeal is pending. The superior court has jurisdiction to deny the motion. If the superior court wishes to grant the motion, "it must first apply for and obtain a remand of the case from this court for the stated purpose of granting a Civil Rule 60(b) motion." *Id.*

We have never stated or implied that this procedure is exclusive. It is merely one way to resolve the competing policies presented. The policies are "the traditional rule that only one court can have jurisdiction over a case at one time ... [and the] equally traditional notion that appellate court evaluation should not precede trial court consideration of matters properly within the province of a lower court." *Id.* at 501 (quoting Note, *Disposition of Federal Rule 60(b) Motions During Appeal*, 65 Yale L. J. 708, 709 (1956)). The procedure employed in this case is consist-

---

**2.** We assume that the court also intended to modify the final decree by transferring to Larry ownership of the deferred income account.

ent with both of these policies. If the trial court had desired to follow the *Duriron* method precisely, it could have applied to this court for a remand for the purpose of granting Ramona's motion. This, however, would have been an unnecessary step since we had already ordered a remand for the purpose of considering the issue which later became the substance of her Rule 60(b) motion.

■ Larry also argues that our order of remand was insufficiently specific to empower the superior court to grant Ramona's motion for Rule 60(b) relief. Although neither Ramona's motion nor our order explicitly mentioned a 60(b) motion, our order explicitly remanded "to allow for resolution of the issue of distribution of certain deferred compensation funds." This was the issue that was resolved by the trial court on remand. Our order was understood and correctly followed by the trial court.

Larry's second point on appeal is that the trial court abused its discretion in granting the motion to modify because Larry lacks the funds to make the cash payment required by the modification. Larry argues that in order to satisfy the judgment he will have to liquidate some of his assets. He cites *Hayes v. Hayes*, 756 P.2d 298, 300 (Alaska 1988), for the proposition that a court should not order a party to make a payment which is beyond his financial ability.

■ Larry's argument is not compelling. *Hayes* is inapplicable. In that case the debtor was required to make annual recurrent payments which exceeded his income. We held that on remand "[e]ither appropriate adjustments should be made, or findings should be entered to the effect that alternative means are available to the husband to meet his obligations." *Id.* at 300–301. Here, Larry can meet his obligations. He can liquidate his other assets or obtain money from the deferred income account

by persuading the Municipality that his has become a hardship case.

Larry's third point is that the trial court erred "in attempting to substitute a lump sum judgment for retirement benefits without reducing the same to present value or determining the taxes on such funds." Larry's argument is that there is a lack of equivalency between the amount which he must pay to Ramona and the value of the deferred income account, which was re-transferred to him, by implication, because he will, at some point, have to pay taxes on the latter.[3]

■ This argument does not warrant reversal. Although the account will be taxed in the future, the superior court is only required to consider tax consequences when there is proof of an "immediate and specific tax liability." *Oberhansly v. Oberhansly*, 798 P.2d 883, 887 (Alaska 1990). As this case stands, it is uncertain as to whether Larry intends, or will be able, to use the deferred income account to discharge his liability to Ramona. Instead, he may sell or mortgage other assets in order to do so. Thus, the posture of this case is much like that present in a case which we quoted and relied on in *Oberhansly:*

> Although there will be tax consequences if defendant satisfies the judgment by withdrawing funds from the corporations or selling some of his stock, there is no indication that he must or intends to do either to satisfy the judgment. He may choose to borrow the money or make the payments out of other property. Of course, once the property is divided pursuant to the trial court's order, the [future] tax consequences may vary on further sale or liquidation from what they would have been had the property been divided differently. The trial court need not speculate on such possibilities, however, or consider tax consequences that may or may not arise after the division of the community property.

---

**3.** Larry also argues that the deferred income account had not vested at the time of trial and should have been reduced to present value. Both points lack merit. This is not an appeal from the original judgment. The account had

vested by the time the Rule 60(b) motion was granted. Apart from the question of taxes, Larry has made no argument that the present value of the account is not its stated value.

*Id.* (quoting *Weinberg v. Weinberg,* 67 Cal.2d 557, 63 Cal.Rptr. 13, 18, 432 P.2d 709, 714 (1967)). Thus, Larry has not satisfied the immediacy requirement of *Oberhansly.*

Larry's fourth point on appeal is that the trial court erred in refusing to consider his Rule 60(b) motion. At the hearing to consider the parties' respective Rule 60(b) motions, the trial judge ruled that, based on our remand, he had jurisdiction to redivide the marital estate in order to deal with the nontransferability of the deferred compensation account. However, the court refused to consider any other matters raised by the parties, deeming them "beyond the jurisdiction of the remand." Larry's argument is that, apart from any jurisdiction conferred by the remand, the superior court had independent jurisdiction under *Duriron* to consider his Rule 60(b) motion.

■ We agree with Larry on this point. Under *Duriron,* the superior court had jurisdiction to consider Larry's Rule 60(b) motion without obtaining a remand from this court for that specific purpose. Contrary to what Ramona argues, a remand would have been required *only* if the court had considered Larry's motion and decided to grant it. Since Larry was entitled to have his Rule 60(b) motion considered, we remand to the superior court for that purpose. If the court decides to grant Larry's motion, no request for a remand will be necessary because the case will no longer be pending before this court.

■ Larry's final point on appeal is that the amended judgment constitutes an unfair distribution of the marital property. This is, in essence, an attack on the original property division made by the trial court. As the original judgment is not before us on appeal, this point may not be considered.

For the reasons stated, the judgment is AFFIRMED in part, REVERSED in part, and REMANDED.

BURKE, J., not participating.