Ruth M. BROWN, Appellant,

v.

Donald BROWN, Jr., Appellee.

No. S–6816.

Supreme Court of Alaska.

March 29, 1996.

Dan Allan, Law Office of Dan Allan, Anchorage, for Appellant.

Donald Brown, Jr., Pro Se, Kenai.

Before RABINOWITZ, MATTHEWS, COMPTON, and EASTAUGH, JJ.

## OPINION

COMPTON, Justice.

### I. INTRODUCTION

In the parties' divorce proceeding, Ruth Brown was awarded approximately fifty-percent of the marital property, one year of rehabilitative alimony, legal and physical custody of the children, and child support. She appeals issues related to each.

### II. FACTS AND PROCEEDINGS

Ruth Brown and Donald Brown were married in 1981. They have three children. During the marriage Ruth was primarily a homemaker, although she attended college briefly early in the marriage. Donald worked for his parents' construction company. From 1990 to 1993, his wages from this company varied from $58,517.60 to $71,561.45.

In mid–1992 the parties separated. Ruth and the children moved to Anchorage from Soldotna. Ruth began working as a medical receptionist, earning $1,400 per month, and began a training program to become a physician's assistant. She also sued Donald for divorce and other relief.

Trial was held in August 1994. The parties agreed that Ruth would have primary physical custody of the children. Following trial the court granted her legal custody. The court awarded Donald the marital home in Soldotna, a 1979 auto, and various personal property, along with the responsibility for payment of two student loans, an auto loan, and several credit card debts. With an equalization payment from Ruth, his property award totaled $17,685. The court awarded Ruth a newer auto, the portion of Donald's retirement accrued during marriage, and various personal property, and also required an equalization payment to Donald. Her property award totaled $17,681.

Donald was awarded visitation on alternate weekends, a substantial part of the summer vacation, half of Christmas holidays, alter-

nate Thanksgivings, Easters, and spring breaks, his birthday, and—if no significant travel is involved—Father's Day. The paternal grandparents were awarded a vacation period with the children covering part of the father's summer visitation. Transportation expenses are to be paid by Donald until 1996, when they are to be divided evenly between Donald and Ruth. The court ordered Donald to pay child support of $1,291 per month. The court also awarded rehabilitative alimony of $1,000 per month for one year.

Ruth appeals seven different issues.

## III. DISCUSSION

### A. The Superior Court Correctly Determined the Equity in the Marital Home

A trial court's determination of the value of the property available for distribution "is a factual determination which will be reversed only if clearly erroneous." *Jones v. Jones,* 835 P.2d 1173, 1175 (Alaska 1992).

Ruth argues that the court erroneously valued the equity of the marital house at $43,100. She argues that uncontested testimony placed the appraisal at $61,000. She argues that only one outstanding loan, for $9,202, existed at the time of trial. She concludes that the equity in the house was therefore $51,798.

The appraisal value of the residence was stipulated to be $61,000. Testimony indicated two loans were taken out using the residence as collateral. One was from Donald's parents for $20,000 to purchase the residence. At the time of trial the balance was $9,272.55. In August 1992, the balance was $12,930.71. The second loan was for the purpose of moving the residence and furnishing it with gas. By the time of trial, this loan had been paid off. However, in August 1992 this loan had a balance of $5,749.75.

The parties separated in July or August 1992. The court found that the equity value of the property was $43,100; given the figure it arrived at, it is clear that the court valued the property as of the date of separation ($61,000 − $12,930.71 − $5,000 = $43,069.29), not the date of trial. Ruth argues that the property should be valued as of the date of trial.

"Ordinarily ... the date of valuation, which may be distinct from the date employed to distinguish marital from post-marital property, should be as close as practicable to the date of trial." *Ogard v. Ogard,* 808 P.2d 815, 819 (Alaska 1991) (footnote omitted). This is to provide recent rather than stale financial valuations. *Id.* The date for distinguishing marital from post-marital property, however, is the date of separation. *Cox v. Cox,* 882 P.2d 909, 917 (Alaska 1994).

Since post-separation income is separate property, payments made by Donald that increased the equity in the house are his separate property. Therefore, the trial court appropriately valued the mortgage liability on the house as of the date of separation.

### B. The Trial Court Did Not Abuse Its Discretion in Dividing the Property Equally

Ruth argues that the statutory factors dictate a property division weighted in her favor. She cites the different earning capacities, her lack of training and skills, and her absence from the job market.

The court has broad discretion in determining a property division. *Laing v. Laing,* 741 P.2d 649, 651 (Alaska 1987). By statute, the court is empowered to divide all of the property acquired during the marriage and to invade separate property of either spouse if a balancing of the equities so requires. AS 25.24.160(a)(4).[1] On review, this

---

1. The court is to consider the following factors:
   (A) the length of the marriage and station in life of the parties during the marriage;
   (B) the age and health of the parties;
   (C) the earning capacity of the parties, including their educational backgrounds, training, employment skills, work experiences, length of absence from the job market, and custodial responsibilities for children during the marriage;
   (D) the financial condition of the parties, including the availability and cost of health insurance;
   (E) the conduct of the parties, including whether there has been unreasonable depletion of marital assets;

court will only disturb a property division if it is clearly unjust. *Laing,* 741 P.2d at 651.

A 50/50 property split is presumptively just and is the starting point for application of the factors the court must consider. *Hayes v. Hayes,* 756 P.2d 298, 300 (Alaska 1988); *Wanberg v. Wanberg,* 664 P.2d 568, 574–75 (Alaska 1983). An unequal division may be upheld "when it is justified by relevant factors identified in the findings of the court." *Hayes,* 756 P.2d at 300. In *Hayes,* we upheld an unequal division because the findings of the trial court indicated "the wife's future need for income during a period when she will be pursuing an advanced professional degree." *Id.* This was akin to rehabilitative alimony. Where a couple has sufficient assets, "the spouse with the smaller earning capacity can and should receive a larger share in the property distribution to aid him or her in this transition." *Dixon v. Dixon,* 747 P.2d 1169, 1173 (Alaska 1987). Furthermore, property division is preferable to alimony for providing for parties' needs. *Id.*

The court awarded Donald the marital home, a 1979 auto and various personal property, as well as the responsibility for several debts. His property award totaled $17,685. The court awarded Ruth a newer auto, the portion of Donald's retirement accrued during marriage, and various personal property. Her property award totaled $17,681. However, her personal property was not valued, though Donald's was, and testimony indicated that she had a piano as well as other goods. We are not persuaded that the court's award was an abuse of discretion.

C. *The Superior Court's Determination of Child Support Must Be Supported by Findings*

Ruth argues that the superior court erred in determining the child support award

because it improperly calculated Donald's adjusted income under Civil Rule 90.3. She argues that the court did not take into account Donald's permanent fund dividend or his employer-provided transportation.

A child support award will not be reversed unless this court has "a definite and firm conviction based on the record as a whole that a mistake has been made." *Kowalski v. Kowalski,* 806 P.2d 1368, 1370 (Alaska 1991). According to the commentary to Rule 90.3,[2] permanent fund dividends are to be included in income. Alaska R.Civ.P. 90.3 cmt. III.A.6. Such an inclusion also finds support in the language of the rule: "total income from all sources." Alaska R.Civ.P. 90.3(a)(1). The commentary also suggests inclusion of "perquisites or in-kind compensation to the extent that they are significant and reduce living expenses, including ... employer provided ... transportation benefits." Alaska R.Civ.P. 90.3 cmt. III.A.19. While we have not addressed specifically the inclusion of permanent fund dividends, we have held that transportation expenses need to be considered. In *Coghill v. Coghill,* 836 P.2d 921, 926 (Alaska 1992), we reviewed the trial court's assessment of the income of a self-employed parent. The parent objected to the trial court's disallowance of a deduction from income for the business expense of transportation, allowed under federal income tax rules. Although transportation cost is a legitimate business expense, we held it also reduced his living expenses and thus needed to be incorporated into his income.

In this case, the court ordered child support of $1,291 per month, apparently calculated according to Rule 90.3. No worksheet was provided, however. It is important that trial courts provide a written analysis of their child support awards. Without such an analysis, we are unable to review their determi-

(F) the desirability of awarding the family home, or the right to live in it for a reasonable period of time, to the party who has primary physical custody of children;
(G) the circumstances and necessities of each party;
(H) the time and manner of acquisition of the property in question; and

(I) the income-producing capacity of the property and the value of the property at the time of division.
AS 25.24.160(a)(4).

**2.** This court has not officially adopted the commentary, but may rely on it for guidance. *See Eagley v. Eagley,* 849 P.2d 777, 779 (Alaska 1993) (used to aid in determining adjusted annual income for self-employed parent).

nations; a remand becomes necessary in most cases. This is such a case, and we therefore remand for findings setting forth the computations on which the child support award was based.

### D. The Reduction in Child Support Payments When Donald Has Extended Custody Needed to Be Supported With Findings

■ The court allowed a fifty-percent reduction in child support payments when the children are with Donald for longer than twenty-seven consecutive days. This is scheduled to occur once every summer. Ruth challenges this allowance, alleging that the disparate income of the parties, as well as a minimal reduction in support expenses during the period, make the reduction unfair.

Civil Rule 90.3 specifically grants the trial court power to make such an adjustment.[3] Only one case from this court has specifically discussed Rule 90.3(a)(3). In *Renfro v. Renfro*, 848 P.2d 830, 832 (Alaska 1993), we first observed that "[t]he decision whether to credit the obligor parent's support obligation for these expenses is committed to the superior court's discretion." We then held that the trial court must make specific findings detailing its reasons for declining to apply the adjustment, and remanded the case to the superior court for such findings. *Id.*

■ We hold that just as a trial court must make specific findings in *denying* a Civil Rule 90.3(a)(3) reduction, so must it make specific findings in *allowing* such a reduction. Were we to hold otherwise, Rule 90.3(a)(3) would be transformed into a presumption that child support payments should be reduced, absent express findings to the contrary. We see nothing in the language of Rule 90.3(a)(3) that suggests that it establishes any such presumption. Rather, Rule 90.3(a)(3) only states that the court "may allow" such reductions.

We remand this issue to the superior court for specific findings explaining both its decision to reduce the child support award pursu-

ant to Rule 90.3(a)(3), and its decision to reduce this award by the full fifty-percent allowable under the Rule.

### E. The Superior Court Did Not Abuse its Discretion in Providing Visitation Rights for the Paternal Grandparents

Ruth argues that "[i]t was an abuse of discretion for the court to provide the grandparents with specific visitation rights, when such visitation was not ordered pursuant to a finding that it would be in the best interests of the children."

■ "[T]he court may ... make, modify, or vacate an order for the custody of or visitation with the minor child ... including an order that provides for the visitation by a grandparent or other person if that is in the best interests of the child." AS 25.24.150(a). AS 25.24.150(a) does not require the trial court to specify *why* such visitation is in the best interests of the children. Instead, it merely states that the trial court may award such rights if they *are*, in fact, in the best interests of the children. Thus it is implicit in the court's decision that such visitation is in the best interests· of the children. The trial court could have reasonably determined that visitation by the paternal grandparents would be in the best interests of the children; we see no reason to require a precise explanation. Cases cited by Ruth do not support a contrary result.

### F. The Allocation of Transportation Expenses for the Children Was Proper

■ The superior court ordered Donald to pay transportation expenses for the children's travel until 1996; the expenses would be split after that. It carved out an exception for Father's Day, Mother's Day, and birthday visits; those expenses would be borne by the "honored" parent. Ruth argues that this order was an abuse of discretion, since the method of travel was left to Donald, and he might choose "expensive" air travel.

Nothing in the record indicates that Donald has control over the travel method after

---

**3.** "The court may allow the obligor parent to reduce child support payments up to 50% for any period in which that parent has extended visita- tion of over 27 consecutive days." Alaska R.Civ.P. 90.3(a)(3).

1996. While the court ordered Ruth to cooperate with air travel if "the father has arranged for transportation by air to Kenai," the current home of Donald, this statement occurred in the paragraph that ordered Donald to pay for expenses through 1996. Nothing indicates that Donald has sole control over travel method after 1996, and Ruth's argument fails.

### G. *The Rehabilitative Alimony Award Was Proper*

■ The court also awarded rehabilitative alimony of $1,000 per month for one year. The court stated that Ruth "has made a good case for rehabilitative or reorientation alimony. There is no question that all concerned will benefit from the enhanced income that will attend the completion of her studies. I cannot, however, justify such payments beyond October 1995 at $1,000 per month." Ruth's studies were slated to end in September 1995, with a board exam at the end of October. Her expected income would then rise to between $35,000 and $38,000 per year.

Ruth argued that the award was insufficient to meet its stated purpose, as it terminated prior to her certification, which was expected in January 1996. She therefore requested that rehabilitative alimony be extended to January 1996.

■ The object of rehabilitative alimony is to rehabilitate the spouse's job skills. *Richmond v. Richmond,* 779 P.2d 1211, 1215 (Alaska 1989). As we stated in *Richmond:*

> Rehabilitative alimony may be awarded for a specific purpose and a short duration even with an adequate property division, but is limited to job training or other means directly related to entry or advancement within the work force. The party seeking rehabilitative alimony must intend to use it for such purposes. Absent such an intent, rehabilitative alimony should not be awarded.

*Id.* (citations omitted); *see also Jones v. Jones,* 835 P.2d 1173, 1178–79 (Alaska 1992) (rehabilitative alimony is warranted only if it will be used for "job training designed to lead to employment"); *Schanck v. Schanck,*

717 P.2d 1, 5 (Alaska 1986) (rehabilitative alimony is "properly limited to job training or other means directly related to the end of securing for one party a source of earned income"). The trial court must find that the alimony will be applied to job training. *Miller v. Miller,* 739 P.2d 163, 165 (Alaska 1987) (remanding for such a finding, and allowing an award "[o]nly if the court finds that she does intend to prepare to re-enter the work force").

By her own testimony, Ruth acknowledged that her training and exams would be fully completed by the end of October 1995. While she alleged that she would not be able to enter the job market in her new profession until the beginning of 1996, nothing prevented her from finding employment for the last part of 1995. She had no additional school expenses and no studies to complete. Understandably she would have liked to be supported for that period; however, nothing prevented her from supporting herself. In our cases upholding rehabilitative alimony awards, no case identifies a specific time when rehabilitative alimony must terminate. However, in *Dixon v. Dixon,* 747 P.2d 1169, 1173 (Alaska 1987), we overturned a rehabilitative alimony award, finding that the education plan did not prevent the spouse from working full-time, and thus did not justify the "substantial award." Applying the reasoning of *Dixon* to the case before us, we conclude that the superior court's termination of rehabilitative alimony at the conclusion of Ruth's studies was well within its discretion.

### IV. *CONCLUSION*

We REMAND the case to the superior court for findings regarding the child support award, in accordance with parts III.C and D of this opinion.[4] We AFFIRM the decision of the superior court in all other respects.

---

4. We do not retain jurisdiction over this appeal.

In the event either party wishes to appeal the

ruling on remand, the party may file, within 30 days after the superior court distributes its ruling, a notice to reinstate the appeal, a supple-mental statement of points on appeal, and request a supplemental briefing schedule.