**Lora M. BERRY, Appellant,**

v.

**Samuel BERRY, Appellee.**

No. S–8258.

Supreme Court of Alaska.

April 16, 1999.

John C. Pharr, Law Offices of John C. Pharr, Anchorage, for Appellant.

G.R. Eschbacher, Law Office of G.R. Eschbacher, Anchorage, for Appellee.

Before: MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

Lora Berry claims she should have been awarded more of her ex-husband's retirement pay to compensate for mortgage and repair payments she made on the marital home after the parties separated. Because the superior court made no findings on Lora's request for a credit for those payments, and because the evidence does not permit us to hold as a matter of law that Lora is not entitled to a credit equal to her payments, we reverse the property division and remand for findings. But we affirm the superior court's decisions (1) not to require Samuel Berry to carry Lora on his survivor benefit plan at his expense, and (2) to require Lora to bear half the couple's tax debt for the seven years before they separated.

## II. FACTS AND PROCEEDINGS

Samuel and Lora Berry married in Georgia in March 1973. Samuel joined the Army in May 1973 and retired in December 1993. Samuel and Lora agree that they lived apart for much of Samuel's military career. They moved to Alaska in 1975, but Samuel was thereafter stationed at a variety of locations elsewhere, while Lora remained in Alaska and lived in the family home. Samuel appears to have visited Alaska and Lora for only about fifteen weeks total between 1985 and December 1993, when the parties separated. In November 1994 Samuel filed for divorce in Alaska. Their children were adults when their divorce decree was entered in 1997.

The superior court held a hearing in January 1997 to resolve date-of-separation and property-division issues. The court concluded that the marriage ended as a joint enterprise in December 1993, when Samuel returned to Colorado. It awarded Lora the marital home and the equity and debt associated with it. It also awarded Lora her Individual Retirement Account, her profit sharing plan and associated debt, the parties' vehicles, and twenty-five percent of Samuel's gross military retirement pay effective December 1993, when he retired from the mili-

tary service. The court awarded Samuel seventy-five percent of his gross military retirement pay, and did not require him to carry Lora on the survivor benefit plan. The court also ordered the parties to split equally their tax refunds and tax debts from 1987 to 1993. Finally, the court ordered the parties to bear their own costs and fees, but ordered Lora to pay Samuel $1,102 for costs and fees associated with paternity testing for a child born to Lora in 1994; the court had previously found that the child was not Samuel's.

Lora moved for reconsideration, challenging the court's treatment of Samuel's retirement pay, her request for a credit for her post-separation mortgage payments and home repair expenses, the survivor benefit plan, and the tax debt. The court denied the motion.

Lora appeals.

### III. DISCUSSION

#### A. Standards of Review

■ The superior court has broad discretion when dividing property in a divorce action.[1] When the parties have commingled their assets in a marriage of long duration, property division consists of three steps: "(1) determining what property is available for distribution; (2) placing a value on that property; and (3) allocating the property equitably."[2]

■ We review a trial court's determination of the property available for division for abuse of discretion.[3] If the superior court reaches any legal conclusions while determining which property is available, we review those conclusions de novo.[4]

■ The valuation of available property is a factual determination that should be reversed only if clearly erroneous.[5] The superior court's equitable allocation of property "is reviewable under the abuse of discretion standard, and we will not disturb the trial court's allocation 'unless it is clearly unjust.'"[6]

■ We review for abuse of discretion a superior court's decision whether to give a credit to a spouse for payments made to maintain marital property, such as the family home.[7] Whether it was error not to make fact findings on particular disputes is a legal question which we review de novo.[8]

#### B. Lora's Post–Separation Mortgage and Home–Repair Payments and Samuel's Military Retirement Pay

Finding that Samuel's military retirement had a net present value of $200,000 at the time of trial, and concluding that all of the retirement benefit was marital property, the superior court awarded seventy-five percent of the retirement benefit to Samuel and twenty-five percent to Lora. In doing so, the court came admirably close to achieving an equal division of marital assets: it awarded Samuel marital property worth $150,000 (consisting exclusively of his share of the retirement benefit) and it awarded Lora marital property worth $150,703. The marital property awarded to Lora included the house (valued at the difference between its market value at time of trial and the debt then owing on it), twenty-five percent of Samuel's retirement benefit, and other items.

Lora argues that it was error to award her less than fifty percent of Samuel's retirement. She reasons that she paid $58,000 on the mortgages and $8,000 for home repairs between the time the parties separated and the time of trial, and that those payments exceeded the $50,000 value of her twenty-five

1. See AS 25.24.160(a)(4); Cox v. Cox, 882 P.2d 909, 913 (Alaska 1994).

2. Doyle v. Doyle, 815 P.2d 366, 368 (Alaska 1991) (citing Moffitt v. Moffitt, 749 P.2d 343, 346 (Alaska 1988)).

3. See Jones v. Jones, 835 P.2d 1173, 1175 (Alaska 1992).

4. See Cox, 882 P.2d at 913.

5. See id. at 913–14.

6. Doyle, 815 P.2d at 368 (quoting Moffitt, 749 P.2d at 346; Wanberg v. Wanberg, 664 P.2d 568, 570 (Alaska 1983)).

7. See Rodriguez v. Rodriguez, 908 P.2d 1007, 1013 (Alaska 1995).

8. See Cox, 882 P.2d at 913.

percent share of Samuel's retirement. She asks for an award of fifty percent of Samuel's retirement, or for remand for consideration of the "weight" to be given to her mortgage and repair payments.

Although the parties' arguments focus on Samuel's retirement, this is really a dispute about whether it was error not to credit Lora for post-separation mortgage and repair payments. Lora's claim that she should receive another twenty-five percent of Samuel's retirement simply identifies the only marital asset whose division would be affected if the credit were granted.[9]

Samuel argues that the equal division of property is presumptively fair. He contends that courts are not required to give credit for post-separation payments to maintain marital property; he says a court may consider factors such as "which party benefitted from the use of the asset during the separation and whether or not the asset was one capable of generating income." He argues that Lora benefitted from the use of the home, that he was effectively excluded from the home, and that the repairs and maintenance payments of $8,000 may have been necessary due to Lora's "neglect and failure to maintain the property."

Samuel also argues that reimbursing Lora for the payments would award her more than fifty percent of the marital estate. That consideration is irrelevant if the evidence justifies giving a credit to Lora for her use of personal assets to preserve or enhance the value of marital property.

An equal division of marital property is presumptively just.[10] An equal division is "the starting point for application of the [AS 25.24.160] factors the court must consider." [11] However, "[a]n unequal division may be upheld 'when it is justified by relevant factors identified in the findings of the court.' " [12]

Courts may give credit to one spouse for post-separation payments made to preserve marital assets, but are not required to do so. As we have explained:

> [I]t is our view that no fixed rule requiring credit in all cases should be imposed. Instead, the fact that one party has made payments from non-marital income to preserve marital property should be considered as one of the circumstances to be weighed by the trial court in dividing the marital property.[13]

We have required trial courts to make factual findings on whether a credit is appropriate.[14]

Although Lora testified about her post-separation payments, the superior court did not expressly resolve the credit issue in its oral findings and comments or in its written findings of fact and conclusions of law. The court's property division necessarily denied Lora's request for the credit, but no findings explain why it was denied.

We must therefore determine whether the record supported Lora's request for a credit. If it did, this issue cannot be decided as a matter of law, and the failure to make fact findings on the issue cannot be considered harmless.

---

9. It is undisputed that military retirement pay can be considered marital property subject to equitable division in divorce settlements. *See Chase v. Chase,* 662 P.2d 944, 946 (Alaska 1983); *see also Doyle,* 815 P.2d at 370 (upholding award to wife of one-half of nineteen-twentieths of husband's military retirement pay because the parties were married for about nineteen of husband's twenty years of service).

10. *See Brown v. Brown,* 914 P.2d 206, 209 (Alaska 1996); *Wanberg,* 664 P.2d at 574–75.

11. *Brown,* 914 P.2d at 209.

12. *Id.* (quoting *Hayes v. Hayes,* 756 P.2d 298, 300 (Alaska 1988)).

13. *Ramsey v. Ramsey,* 834 P.2d 807, 809 (Alaska 1992).

14. *Compare Brotherton v. Brotherton,* 941 P.2d 1241, 1246 (Alaska 1997) (remanding for consideration of former husband's "preservation of the marital estate by reduction of the marital debt with post-separation income"), *and Cox,* 882 P.2d at 919–20 (noting absence of findings on whether post-separation payments of marital expenses should change property distribution, and remanding for such findings), *with Harrelson v. Harrelson,* 932 P.2d 247, 253 & n. 7 (Alaska 1997) (affirming trial court's decision not to give credit for post-separation house payments, where trial court explicitly addressed issue in its findings of fact and in resolving post-trial motions).

We conclude that the record contains evidence sufficient to create a genuine, material fact dispute, and that we cannot hold as a matter of law that Lora was entitled to no credit. Lora testified that she paid $58,000 on the home loans between the time the parties separated and the time trial began, thirty-six months later. Any benefit Lora received by living in the house may have been offset by its poor condition. Lora testified that the house was a "total wreck" in November 1993 when Sam left; that there was water damage everywhere; and that it was "depressing" to enter the house. She implied that, although the house was worth $149,000 at the time of trial, no one would have rented it before she remodeled and repaired it. Lora's testimony supported a finding that the home's state of disrepair significantly depressed its rental value, thus permitting (but not compelling) a finding that the mortgage payments exceeded the value of the benefit Lora received from living in the house. It therefore raised a genuine dispute about whether Lora should have received a credit for her debt payments.

Lora's testimony that she paid for repairs was also sufficient to create a genuine fact dispute about whether she should be given a credit for those payments, because that evidence supported a finding that she used her personal resources to maintain marital assets. Even if the improvements enhanced the rental value to the point that the benefit of living there was equivalent to the debt payments, the use of non-marital assets to enhance the rental value potentially justified a credit.

But there are many reasons why the court may have denied the requested credit for the mortgage payments. For example, it might have found that Lora's mortgage payments roughly equaled the benefit she received from living in a three-bedroom home.

Further, some of Lora and Samuel's testimony seems to imply that proceeds from a mortgage loan were used to pay for the remodeling. If so, the court may have decided that it would be inequitable to reimburse Lora for the remodeling expenses. Alternatively, the court may have reasoned that repairs or improvements did not substantially change the market value of the house as of the time of trial—or accepted Samuel's claim that Lora failed to maintain the house during the marriage and wasted or depleted marital assets.

But the evidence does not compel any of these findings, and the absence of fact findings on the credit issue consigns us to speculation and prevents us from applying the deferential "clearly erroneous" standard of review.[15] We therefore remand for consideration of Lora's claim that she should receive credit for these payments.

Samuel argues that Lora received the post-separation benefit of claiming a deduction for the mortgage interest. Although that circumstance might justify reducing or denying a credit, it is a matter for the trial court to consider and explain. That circumstance cannot justify affirmance absent any findings on the issue.

### C. *Survivor Benefit Plan*

Lora argues that the superior court erred by failing to require Samuel to carry Lora, at his expense, on the survivor benefit plan securing his military retirement benefit against the risk of his death. She recognizes that, although the parties agreed in the superior court that Lora would be carried on the plan, they disagreed about who should pay.

Samuel objected in the superior court to paying to carry Lora on the survivor benefit plan, but did not object to carrying her on the plan if she paid the attendant expense. He argues on appeal that he does not oppose awarding Lora an interest in the plan, as long as her interest is limited to twenty-five percent and she pays for it.

At the hearing, the superior court announced that "[u]nder the circumstances established in this case no survivorship benefit should be awarded to the defendant." This ruling implicitly declined to make Samuel bear the cost of carrying Lora on the surviv-

---

**15.** *See Doyle,* 815 P.2d at 368 ("[T]he trial court must render findings of ultimate fact that support any decreed property division; the findings must be explicit and sufficiently detailed to give this court a clear understanding of the basis of the trial court's decision.") (citations omitted).

or benefit plan, but did not prevent Lora from accepting Samuel's offer to carry her on the plan at her expense. The written conclusions of law state that Samuel "shall not be required to carry [Lora] on the Survivor Benefit Plan."

We reject Lora's implicit argument that we should enforce the parties' "agreement." The parties reached no agreement about who should pay.

[12] We also reject Lora's claim that because she was awarded less than half of Samuel's retirement benefit, she should not have to bear the premium expense. She does not state the cost of covering her interest, or provide any other support for her argument. Her unsupported assertion does not demonstrate an abuse of discretion. Nor has she demonstrated any reason why Samuel should pay the cost of securing her interest in the retirement benefit. If Lora wants to be carried on the plan, she should bear the expense of that protection. If on remand she agrees to bear that expense, Samuel should be required to facilitate covering her under the survivor benefit plan to the extent of her interest.

### D. Tax Debt and Refund

Finally, Lora argues that the superior court erred in requiring her to bear fifty percent of Samuel's tax debt for calendar years 1987 through 1993. She contends that Samuel committed an "economically senseless act" by amassing "an unnecessary tax debt as a litigation strategy." She asserts that Samuel filed separate returns in April 1994 for the six previous years to support his superior court contention that the marriage ended several years before December 1993. She implies that by causing the parties to file separate returns, Samuel increased the couple's tax liability and wasted marital assets.

Samuel argues that the parties had originally decided to file joint returns, that he sent Lora his W–2 forms, and that she failed to file on time. He maintains that he learned in August 1993 that Lora had not filed the returns and that he owed the IRS $11,000 plus interest and penalties. He asserts that he filed separately because Lora failed to file the joint returns.

The superior court refused to assign blame for the late filing; it concluded that the tax debt and refund were "a circumstance that [had] a monetary impact on the economic unit while it functioned as a marriage," and that they should be shared equally.

Lora's arguments that Samuel committed an economically senseless act or wasted marital assets are unconvincing. Her acknowledgment that they had agreed to file jointly, that he sent her his W–2 forms, and that she simply failed to file, undermines her claim that Samuel engaged in a litigation strategy that unreasonably depleted marital assets. Lora relies on *Jones v. Jones*,[16] but that case is distinguishable. The question in *Jones* was whether the former husband's illegal gambling losses wasted marital assets, and if so, how much value the trial court should have added to the marital estate to compensate for the misconduct.[17] Samuel engaged in no comparable misconduct.

The superior court did not clearly err by finding that the tax debt was a consequence of the marriage. The parties do not dispute that the debt arose before December 1993, when the parties separated. It was not an abuse of discretion to order each party to bear half of a debt that arose during the marriage, especially because the superior court decided that the debt was not the result of party misconduct. The fairness of dividing the debt is confirmed by the superior court's equal division of the entire marital estate.

### IV. CONCLUSION

Given the absence of any findings resolving Lora's claim that she was entitled to a credit for her post-separation mortgage and home repair payments, we REVERSE and REMAND for further proceedings. We leave it to the discretion of the superior court to decide whether to make those findings on the basis of the evidence before it or to permit submission of additional evidence. We AF-

16. 942 P.2d 1133, 1138 (Alaska 1997).

17. *See id.* at 1140–41.

FIRM as to the rulings on the survivor benefit plan and tax debt.

MATTHEWS, Chief Justice, concurring.

While I fully agree with the majority opinion, I write separately to make one additional observation.

Samuel argues that recognizing Lora's payments made from her separate property to preserve the house after separation but before the divorce would result in an unequal division of property. This, he argues, would run counter to the rule that an equal division of property is presumptively fair. I believe this argument to be fundamentally flawed.

The rule that an equal division of assets of the marriage is presumptively fair is more complicated than it sounds. Often adjustments to value must be made before the rule can be applied. Obvious examples are that the gross value of property must be reduced for secured debt, and assets involving periodic payments must be reduced to present value.

When marital property is wasted by one party after separation but before divorce, the property can be "recaptured" by giving it a pre-waste value and crediting that value to the award to the wasting party. Once this adjustment is made, the whole of the marital property can be divided in accordance with the usual principles. *See Hartland v. Hartland,* 777 P.2d 636, 643 (Alaska 1989):

> The trial court sought to compensate Patricia for the dissipated assets by giving her a larger percentage of the remaining marital estate because it did not believe it had the authority to recapture previously dissipated assets. Because of this incorrect conclusion, we reverse the court's property division and remand the issue to allow the trial court the opportunity to recapture any dissipated assets and then determine the appropriate division of property using the *Merrill* factors.[1] In doing so, the court should take care that it does not double count, that is, recapture dissipated assets and make a preferential award to Patricia because assets have been dissipated.

Expenditures made from separate property to preserve marital property are the other side of the "waste" coin. They can be recognized by making deductions from the award to the party who made the expenditures. The adjustment can be regarded as representing what the property on which the money was spent would be worth if the expenditures had not been made. Once this adjustment is made, all the marital property can be divided. And if the division is equal after the adjustment is made, the rule of presumptive fairness will be satisfied.

For this reason, giving recognition to Lora's expenditures need not violate the equal division rule.

---

1. *Merrill v. Merrill,* 368 P.2d 546, 547 (Alaska 1962).