NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

## THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| HARRY E. GIDEON SAUNDERS, )<br><br>      Appellant, )<br><br>   v. )<br><br>ELKE M. SAUNDERS, )<br><br>      Appellee. )<br>                   ) | Supreme Court No. S-18028<br><br>Superior Court No. 3AN-19-11813 CI<br><br><u>MEMORANDUM OPINION<br>AND JUDGMENT</u>*<br><br>No. 1893 – May 18, 2022 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Herman G. Walker, Jr., Judge.

Appearances: Harry E. Gideon Saunders, pro se, Anchorage, Appellant. Jill C. Wittenbrader, Law Office of Jill Wittenbrader, LLC, Kodiak, for Appellee.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

## I.  INTRODUCTION

The superior court divided property between parties in a divorce. The husband challenges the court's separation date determination and its decision to use a gross pay valuation, rather than a net pay valuation, for a severance payment that was, at least in part, marital property. For the reasons that follow, we vacate the court's rulings and remand for further proceedings.

---

\*  Entered under Alaska Appellate Rule 214.

## II.     FACTS AND PROCEEDINGS

Gideon and Elke Saunders married in October 2000.[1]  They physically separated at the end of February 2019, and Gideon filed for divorce in December. Relevant to this appeal, at the October 2020 trial the parties disputed their separation date and issues connected with Gideon's June 2020 employment severance payment.

### A.     Separation Date

Gideon suggested a late-February 2019 separation date based on when he and Elke first decided to "reside in different houses"; it was the date an accountant used in the spring when attempting to assist them in reaching a property settlement agreement. Gideon testified that he paid Elke child support — calculated in accordance with Alaska Civil Rule 90.3 — backdating to April 2019.

Elke suggested the start of the October 2020 trial should be the separation date.  She testified about the couple making decisions on where the family would live throughout 2019, Gideon filing as married for his 2019 tax returns, and their finances being still commingled as of trial.  She acknowledged that Gideon made child support payments backdating to April 2019.

The superior court determined the separation date was when Gideon filed for divorce in December 2019.  The court acknowledged that Gideon and Elke had physically separated in February.  Mistakenly stating that Gideon had argued for a December separation date, the court found "that the parties acted as a joint financial unit at least until [Gideon] filed his complaint on December 17, 2019."

### B.     Severance Payment

Gideon received an employment severance payment in June 2020.  The gross value of the severance payment was $169,500, but he received roughly $140,000

---

[1]     We address the parties by their preferred names for clarity.

after initial tax withholdings. Gideon suggested that if the severance payment were deemed marital property, the court should value it at the post-tax amount, rather than the gross amount. The superior court found that Gideon's severance package was a marital asset subject to division and valued it at the gross amount.

## C. Reconsideration

Gideon moved for reconsideration, arguing that the separation date more accurately was "when the parties decided to live in separate homes." He emphasized the court's mistaken assertion that he was in favor of the December separation date, and he pointed to testimony demonstrating that the parties were physically separated by the end of February. Gideon referred to his own testimony tending to show his belief that they were permanently separated by March and to his having paid child support beginning in May. He also referred to a June invoice from an accountant as evidence that "the parties were already deep into negotiations about the division of marital property." Gideon argued that the evidence satisfied both the objective and subjective intent prongs under *Fletcher v. Fletcher* for determining a February 2019 separation date.[2] He also argued that the court should have used the net value, rather than the gross value, of the severance payment because the payment had "an immediate and specific tax liability."

Elke opposed the reconsideration motion. She argued that even after physically separating in February, the parties discussed moving back to Kodiak as a family; "decided to move back to Kodiak" once Gideon was terminated from his Anchorage employment; continued sharing a bank account; "filed a joint tax return" for 2019; and otherwise operated as an economic unit because she payed "bills from the joint bank account" and co-signed on a business loan for Gideon. Elke also argued that

---

[2]    *See* 433 P.3d 1148, 1152-53 (Alaska 2018) (explaining that when determining separation date  courts analyze "the parties' objective and subjective intent to terminate the marital relationship").

Gideon failed to prove "the specific tax consequences of the severance pay" and that the court was not required "to speculate in the absence of proof." She further argued that other marital assets would also have tax consequences which had not been addressed and that Gideon was in a better position to shoulder the tax liability for the severance payment.

The superior court granted Gideon's reconsideration motion, but it denied his requests on the merits. The court acknowledged its prior mistaken assertion that Gideon had favored the December 2019 separation date but reasoned that December 2019 still was correct because it was undisputed "that the parties discussed moving back to Kodiak"; they did not return to Kodiak until "after [Gideon] was terminated from" his employment; they shared a bank account throughout 2019; they filed joint tax returns for 2019; Elke "continued to pay the marital bills from the joint account"; and Elke helped Gideon with a new business venture by co-signing a business loan in 2019. The court explained when it addressed the severance payment that it believed under *Oberhansly v. Oberhansly* it did "not have to consider the tax consequences of a property distribution unless it 'create[d] an immediate and specific tax liability.' "[3] The court stated: "There [were] no immediate tax consequences associated with the . . . severance package. [It] is not a retirement account that has immediate consequences."

Gideon appeals.

## III. DISCUSSION

### A. We Remand For Further Proceedings On The Separation Date.

We define the separation date "as the point at which 'the marriage has terminated as a joint enterprise' or when a couple is no longer 'functioning economically

---

[3]     798 P.2d 883, 887 (Alaska 1990).

as a single unit.' "[4]  To determine the separation date, the superior court engages in a "fact-specific inquiry" to evaluate "the parties' objective and subjective intent to terminate the marital relationship."[5]  We generally review the determination for abuse of discretion and will affirm if there is "sufficient evidentiary support in the record."[6]

We recognize that there was conflicting evidence on a number of factual matters underlying a separation date determination and that the superior court has discretion in the determination.  Our concern and remand arise from the court's discussion of two relevant legal frameworks:  the impact of child support payments and how to treat joint ownership of property pending the court's property division order.

"We have repeatedly recognized that child support should be calculated from the date of separation."[7]  It appears to be undisputed that by mutual agreement Gideon began paying child support to Elke beginning in May 2019 and that, at her request, he later included a payment for April.  It further appears that the child support payments were calculated under Rule 90.3.  The act of calculating child support payments demonstrates the parents' clear subjective intent to remain separated as of the physical separation date.  We are unaware of evidence suggesting that the parties discussed reuniting at any point before trial, even though the parties discussed living in the same community for their child's benefit.

---

[4]     *Fletcher*, 433 P.3d at 1152 (quoting *Tybus v. Holland*, 989 P.2d 1281, 1285 (Alaska 1999)).

[5]     *Id.* (quoting *Dundas v. Dundas*, 362 P.3d 468, 472 (Alaska 2015)).

[6]     *Id.* at 1152-53.

[7]     *Christopher D. v. Krislyn D.*, 426 P.3d 1118, 1123 (Alaska 2018); *see, e.g.*, *Spott v. Spott*, 17 P.3d 52, 54 (Alaska 2001); *State, Dep't of Revenue, Child Support Enf't Div. v. Pealatere*, 996 P.2d 84, 88 (Alaska 2000); *Ogard v. Ogard*, 808 P.2d 815, 816 (Alaska 1991).

It also is undisputed that some major property items remained jointly owned pending trial. But if that alone demonstrated a continuing joint economic enterprise, then in most cases there could be no separation date absent the court entering a property division order. A couple with some ongoing financial entanglements does not necessarily continue operating as a "marital economic unit."[8] It is unclear how the court could determine that the parties' continued joint ownership of property after initiating child support payments — along with other indicators of their intent to permanently separate — did not demonstrate a separation but that the mere filing of the divorce complaint then changed the status quo.

For these reasons we remand the separation date determination for further consideration and a more robust explanation of the basis for the determination. We note that a different separation date determination may have an impact on calculating the marital portion of Gideon's 2020 severance payment, the salary bonus Gideon received in March 2020, and other property not addressed on appeal.

## B. We Remand For Further Proceedings On The Severance Payment Calculation And Associated Taxes.

Gideon agrees that "the court need not consider speculative tax consequences that may arise from the division of marital property" but points to *Dundas v. Dundas*, explaining that when a distribution "creates an immediate and specific tax liability . . . the court is required to consider that liability."[9] He argues that the superior court erred by concluding the tax liability on the severance payment was not "immediate and specific" when "the taxes were actually withheld . . . and sent to the IRS." Because

---

[8]   *See Dundas*, 362 P.3d at 472-73 (discussing when marital economic unit may cease to exist even when finances remain commingled).

[9]   362 P.3d at 477-78 (omission in original) (quoting *Oberhansly v. Oberhansly*, 798 P.2d 883, 887 (Alaska 1990)).

"tax debts are incurred when a taxable event occurs, and not when a formal tax return is filed,"[10] we hold that it was error to allocate the gross rather than net value of his severance payment.

Elke acknowledges that under *Oberhansly* the superior court is required to consider "immediate and specific tax consequences" of a marital property division.[11] But she argues that the court "is not required to speculate in the absence of proof of the tax consequence." She contends Gideon presented no expert testimony indicating the severance payment's immediate and specific tax consequences and suggests that Gideon "only speculated that he would have a tax burden in the future and acknowledged that the taxes were not due immediately . . . and that he would have a tax credit for the withholding." Although Elke's cross-examination of Gideon indicated she wanted him to make these concessions, he conceded only that he might have an additional tax burden. And although expert testimony can help resolve issues around tax consequences of marital property, "it is by no means necessary."[12]

Elke also analogizes *Barnes v. Barnes*, which affirmed a superior court's decision not to allocate between parties a potential tax liability one party argued would be "immediate and specific" because he would have to withdraw money from his retirement funds to satisfy the equalization judgment.[13] We concluded that the superior court did not err by disregarding the asserted tax liability because the party did not have to withdraw money from his retirement funds to satisfy the judgment; he instead could

---

[10] *Id.* at 478 (quoting 2 BRETT TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 8.28, at 913 n.22 (3d ed. 2005)).

[11] *See* 798 P.2d at 887.

[12] *Dundas*, 362 P.3d at 478 n.29.

[13] 820 P.2d 294, 297 (Alaska 1991).

"sell or mortgage other assets . . . to do so."[14]  Elke points to *Barnes* as supporting her position that "Gideon was awarded a variety of significant financial assets. . . . [and] is free to use and/or leverage any of these financial assets to pay his debt to Elke."  Though true, this is irrelevant to whether Gideon had an "immediate and specific tax liability" associated with the severance payment at the time of trial and whether the superior court thus erred by valuing the severance payment based on gross rather than net pay.

Elke adds that "there was clear evidence of sale costs and tax consequences of other marital assets, such as [the] sale of . . . properties that were awarded to Elke," for which the court also did not allocate tax consequences.  This argument also is inconsequential.  A mistake in allocating tax consequences for one party is not remedied by making a similar mistake for the other party, and the superior court did not engage with this possible balancing of tax burdens in its order denying reconsideration.  Rather, it summarily found there were "no immediate tax consequences associated with the . . . severance package" and that the package "[was] not a retirement account that ha[d] immediate consequences."  Moreover, the real estate assets to which Elke refers had much more prospective and speculative tax burdens than the severance payment and were not on the same footing as the severance payment because they had not yet been sold nor was it guaranteed that they would be sold.  Gideon received his severance payment before trial, with guaranteed income tax consequences and at least some taxes already withheld.  Contrary to Elke's argument about this being a future tax burden that would arise only when Gideon filed his 2020 tax return, "tax debts are incurred when a taxable event occurs, and not when a formal tax return is filed."[15]

---

[14]    *Id.*

[15]    *Dundas*, 362 P.3d at 478 (quoting TURNER, *supra* note 10, § 8.28, at 913 n.22).

Even under a deferential standard of review, failure to take tax consequences into account renders the superior court's marital asset valuation clearly erroneous. This might have been harmless error had the court expressly determined that, to fairly and equitably distribute the marital estate between the parties, Gideon should be allocated the marital tax debt associated with the marital income. But the court divided the marital estate 55/45 in Elke's favor without mentioning further adjustment for the tax consequences associated with the severance payment.

We recognize that, similar to *Dundas*, Gideon did not present sufficient evidence to determine the severance payment's exact tax consequences.[16] But Gideon raised the issue at trial and presented evidence demonstrating that taxes of at least $28,981 were withheld from the severance payment. As we explained in *Dundas*, if necessary the superior court should have ordered "the parties to present points and authorities or introduce expert testimony to support their positions about the tax effects."[17]

We thus remand the issue of the tax liability associated with the severance payment for further consideration by the superior court. At this point the parties' 2020 tax returns should reflect the exact tax consequences associated with the severance payment, and the court shall adjust the property division accordingly.[18]

---

[16] *See id.* ("Both parties understood the sale had tax consequences, but the superior court was presented with no evidence on what those consequences would be.").

[17] *Id.* (quoting *Oberhansly v. Oberhansly*, 798 P.2d 883, 888 (Alaska 1990)).

[18] *See Oberhansly*, 798 P.2d at 888 (instructing trial court on remand to "consider the actual tax consequences" incurred and "reassess whether the division of property remains equitable").

## IV.  CONCLUSION

We VACATE the superior court's separation date determination and its valuation of the severance payment and REMAND for further proceedings in accordance with this decision.