*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, e-mail corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| KENNETH T. STANHOPE | ) | |
| | ) | Supreme Court No. S-14596 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-10-03007 CI |
| v. | ) | |
| | ) | O P I N I O N |
| MARYNA V. STANHOPE | ) | |
| | ) | No. 6806 - August 9, 2013 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Kari Kristiansen, Judge.

Appearances: Carl D. Cook, Law Office of Carl D. Cook, P.C., Anchorage, for Appellant. Notice of nonparticipation filed by Appellee.

Before: Fabe, Chief Justice, Carpeneti, Winfree, Stowers, and Maassen, Justices.

MAASSEN, Justice.

## I.    INTRODUCTION

Maryna and Kenneth Stanhope married for a second time in 2007. Kenneth filed for divorce in 2010. The superior court divided the marital property 50/50, awarding the marital home to Maryna and ordering her to remove Kenneth from the mortgage and make an equalization payment. Kenneth appeals. He challenges several aspects of the court's findings of fact and disposition of property, but the primary relief

he seeks is the award of the house, either as his separate non-marital property or under an unequal division of the marital property. We affirm the superior court's decision.

## II. FACTS AND PROCEEDINGS

Maryna and Kenneth Stanhope married for the first time in 2003. During this marriage they owned a home on Muffin Street in Wasilla. They divorced in 2006, reporting no property subject to division, and sporadically continued their relationship. They married again in September 2007. In 2008 Kenneth and Maryna sold the Muffin Street house for less than they still owed on the mortgage. They bought a new house, located on West Sunrise Road in Wasilla, with settlement proceeds Kenneth had received in injury claims against former employers. They took out a mortgage on the new house in order to pay off the amount they still owed on the Muffin Street mortgage.

In October 2010 Kenneth filed a complaint for divorce, and a few months later he ejected Maryna from the marital home on West Sunrise Road. Maryna nonetheless made a $5,000 payment on the mortgage in December.

At an April 2011 motion hearing, the superior court awarded interim possession of the house to Maryna and gave Kenneth 60 days to vacate. During this grace period Kenneth filed several motions in an attempt to hold on to possession, but none of his motions succeeded. He did not vacate the house when he was supposed to, and Maryna obtained a writ of assistance from the court, finally gaining possession in June 2011 with the aid of state troopers.

Trial of the couple's property issues occurred in September and December 2011, with both parties represented by counsel. Kenneth and Maryna provided conflicting testimony as to which party had taken or destroyed various items of personal property. Kenneth also sought repossession of the house, arguing that he needed it more than Maryna did because he was mentally disabled due to head traumas from various accidents.

The superior court, in its written findings of fact and conclusions of law, found that Kenneth was disabled and that he had been diagnosed with major depressive and anxiety disorders. The court found that Maryna's current earning capacity was low but Kenneth's was virtually nil. The court also found that when Maryna regained possession of the property in June 2011, the house "appeared to be vandalized." Weighing the disparity in the parties' earning capacities against a finding that Kenneth had wasted marital assets, the court determined that an equal division of property was appropriate. In making this division, the court characterized Kenneth's credit-card debts as non-marital and awarded Maryna a half-credit for her post-separation mortgage payment. The court found that Maryna was in a better position than Kenneth to pay off the mortgage and make an equalization payment; it therefore awarded her the marital residence and ordered her to refinance it, to remove Kenneth from the debt, and to make the equalization payment within a year. The superior court also found that Kenneth had taken some of Maryna's possessions, and it assessed their value against him in the property division.

Kenneth appeals the court's final order. The primary relief he seeks is possession of the house on West Sunrise Road. He argues first that the superior court erred in characterizing the house as marital. Second, he argues that the superior court erred in the legal analysis and factual findings that led to a 50/50 division of marital assets. Third, he argues that the superior court erred in its findings about the parties' contributions to the mortgage during the marriage and their respective abilities to pay it afterwards. Finally, he disputes the court's characterization of the credit-card debts as non-marital; its treatment of certain items of personal property; its award to Maryna of a half-credit for her post-separation mortgage payment; and its grant to Maryna of a year in which to make the equalization payment.

Maryna did not participate in the appeal.

## III. STANDARD OF REVIEW

"There are three basic steps in the equitable division of marital assets: (1) deciding what specific property is available for distribution, (2) finding the value of the property, and (3) dividing the property equitably."[1] The first step involves characterizing the parties' property as separate or marital, a process that "may involve both legal and factual questions."[2] "Underlying factual findings as to the parties' intent, actions, and contributions to the marital estate are factual questions."[3] "Findings of fact are reviewed for clear error, but whether the trial court applied the correct legal rule in exercising its discretion is a question of law that we review de novo using our independent judgment."[4] "The second step, valuation of assets, is a factual determination that we review for clear error."[5] "We review the trial court's third step, the equitable allocation of property, for an abuse of discretion."[6]

We have also held that " 'the trial court must render findings of ultimate fact that support any decreed property division; the findings must be explicit and sufficiently detailed to give this court a clear understanding of the basis of the trial

---

[1]    *Beals v. Beals*, ___ P.3d ___, Op. No. 6789 at 6, 2013 WL 3242376, at *3 (Alaska, June 28, 2013) (citing *Doyle v. Doyle*, 815 P.2d 366, 368 (Alaska 1991); *Wanberg v. Wanberg*, 664 P.2d 568, 570 (Alaska 1983)).

[2]    *Id.* (citing *Odom v. Odom*, 141 P.3d 324, 330 (Alaska 2006)).

[3]    *Id.*

[4]    *Hanson v. Hanson*, 125 P.3d 299, 304 (Alaska 2005) (quoting *Schmitz v. Schmitz*, 88 P.3d 1116, 1122 (Alaska 2004)).

[5]    *Beals*, 2013 WL 3242376, at *3.

[6]    *Id.*

court's decision.' "[7] "Whether a superior court's findings are sufficiently clear is a legal question, which we review de novo."[8]

"A finding of fact is clearly erroneous if, upon review of the entire record, we are left with a firm and definite conviction that a mistake has been made."[9] "We will grant especially great deference when the trial court's factual findings require weighing the credibility of witnesses and conflicting oral testimony."[10] "We review for abuse of discretion a superior court's decision whether to give a credit to a spouse for payments made to maintain marital property, such as the family home."[11]

## IV. DISCUSSION

### A. The Superior Court Did Not Clearly Err In Characterizing The West Sunrise Road House As Marital Property.

Kenneth argues that the superior court erred in characterizing the West Sunrise Road house as marital property. He contends that the house is his separate property because it was purchased with proceeds from his settlement of personal injury claims and it never became transmuted into marital property. Although the superior court agreed that the West Sunrise Road house was purchased with Kenneth's settlement proceeds, its other findings amply support its conclusion that the house was marital property.

---

[7]     *Id.*

[8]     *Id.*

[9]     *Fortson v. Fortson*, 131 P.3d 451, 456 (Alaska 2006) (citing *Schmitz*, 88 P.3d at 1121)).

[10]     *Bigley v. Alaska Psychiatric Inst.*, 208 P.3d 168, 178 (Alaska 2009) (citing *Vezey v. Green*, 171 P.3d 1125, 1128 (Alaska 2007)).

[11]     *Berry v. Berry*, 978 P.2d 93, 95 (Alaska 1999) (citing *Rodriguez v. Rodriguez*, 908 P.2d 1007, 1013 (Alaska 1995)).

First, "[a]lthough holding joint title is not determinative of intent to treat property as marital, it creates rebuttable evidence that the owner intended the property to be marital."[12] Other factors that bear on the parties' intent with respect to real property include whether they used the property as their personal residence and whether they both contributed to its ongoing maintenance and management.[13]

Maryna and Kenneth held joint title to the West Sunrise Road house, and the presumption that it is marital property therefore applies regardless of the source of the funds used to pay for it. Kenneth argues that the parties demonstrated their intent to treat the property as non-marital because Maryna was not allowed to use certain parts of the house; she was the one who was ejected when the parties had disagreements; and she only made mortgage payments after their separation. Yet the mortgage, like the title, was in both parties' names, and the record supports the superior court's findings that Maryna "assisted with the mortgage, utilities and upkeep of the residence." Maryna testified that she sometimes gave Kenneth money to pay toward the mortgage. She also testified that she worked with Kenneth to improve the property by helping build the greenhouse, create a solar energy system, and set up a methane separator. The fact that Kenneth occasionally ejected Maryna and controlled her use of the house does not negate the fact that both parties used it as their primary residence. We conclude that the superior court did not err in characterizing the West Sunrise Road house as marital property.

---

[12]     *Johns v. Johns*, 945 P.2d 1222, 1225 (Alaska 1997) (quoting *Lundquist v. Lundquist*, 923 P.2d 42, 48 (Alaska 1996)) (internal quotation marks omitted).

[13]     *Beals*, 2013 WL 3242376, at *4.

**B.**     **The Superior Court Did Not Err In Its *Merrill* Factors Analysis.**

Using the balancing test of *Merrill v. Merrill*,[14] the superior court divided the property equally.  Kenneth challenges the court's finding that on one side of the balance was his waste of marital assets.  He also argues that the superior court erred by not awarding the residence to him in an unequal division because of his disabilities, his poor earning capacity relative to Maryna's, and his inability to qualify for a mortgage on another residence.

**1.     The finding that Kenneth wasted marital assets was not clearly erroneous.**

The superior court found that when Maryna gained possession of the West Sunrise Road property in June 2011, "the house appeared to be vandalized with large quantities of trash, including a broken toilet, missing shower head, inoperable methane system, broken wood stove, vandalized greenhouse, mold on the bathroom walls, one wall missing, and missing generator to the solar system."  The court's findings do not explicitly state that all of this damage was Kenneth's fault, but they do find explicitly that Kenneth "vandalized the greenhouse and the equipment that he sought to maintain when Maryna . . . took over the residence."  In its analysis of the *Merrill* factors, the court found that Kenneth "wasted a number of marital assets following his exit from the marital home," and the court appeared to weigh this finding heavily in concluding that it was appropriate to "divide the marital property evenly."

Kenneth disputes the court's findings of vandalism and waste.  He argues that the house was in poor condition even before the parties separated, which Maryna acknowledged in her testimony.  She also testified, however, that the condition of the house was much worse when she returned after the separation, when she discovered

---

[14]     368 P.2d 546, 547 n.4 (Alaska 1962).

various fixtures and hardware missing, broken, or destroyed.  She also testified that a room had been completely torn out unnecessarily.  Kenneth testified that the room was pulling off one side of the house, and that he accomplished part of the demolition work before the separation.  But granting the required deference to the superior court's resolution of these conflicting oral accounts of the house's condition both before and after the separation,[15] we cannot conclude that the court clearly erred when it credited Maryna's testimony on the subject.

Kenneth next argues that the court clearly erred in implying that the extensive mold in the house was his fault.  It is true that the record does not appear to support such a finding,[16] but we do not read the court's inclusion of mold in its long list of problems with the house as central to its finding of waste or to its ultimate decision to divide the property equally.  Thus, even if the court clearly erred in finding that the mold was Kenneth's fault, any such error would be harmless.[17]

---

[15]    *Bigley*, 208 P.3d at 178 ("We will grant especially great deference when the trial court's factual findings require weighing the credibility of witnesses and conflicting oral testimony."  (citing *Vezey*, 171 P.3d at 1128-29)).

[16]    Without specifying a time frame, Kenneth's evidence implies that much of the work he did to address the mold problem predated the separation.  One of Maryna's friends testified that there was black mold up the walls of the bedroom when she regained possession of the house; he did not state that this was a recent development, though that could be implied from his testimony.

[17]    *See Fortson v. Fortson*, 131 P.3d 451, 464 (Alaska 2006) (declining to reach issue of alleged error in superior court's classification of items as non-marital where any error was minor in relation to the entire estate at issue and probably had no "appreciable effect on the ultimate determination of equitable distribution"); *Vachon v. Pugliese*, 931 P.2d 371, 376 (Alaska 1996) (holding that although the superior court clearly erred in finding certain statements of the wife to be false, there was enough other evidence bearing on her credibility that it was "highly improbable" that the superior

(continued...)

Kenneth argues that the superior court also erred in listing "missing generator" among the problems with the house when Maryna regained possession, though he makes note of Maryna's testimony that the generator was missing important parts such as the statin battery and inverter. As Kenneth concedes, Maryna's testimony does support a finding that the generator was missing enough essential elements as to be inoperable upon her return, and again, if the court erred in identifying as "missing" the generator itself rather than some of the parts it needed to function, the error is minor and can only be viewed as harmless.

Kenneth also disputes the court's implication that he broke the couple's system for separating methane; he relies on Maryna's testimony that it was inoperable when she moved out in late 2010. But Maryna testified that the system had been able to separate methane during the marriage even though there was no line to the house, and when she regained possession it was completely unusable because all the pipes and fittings were missing. Again, resolution of this conflict in the oral testimony was for the superior court, and we see no clear error.

### 2. The superior court did not abuse its discretion in considering the *Merrill* factors.

Pointing to his disability, his inability to work, and his resulting dependence on the marital home, Kenneth argues that the superior court abused its discretion in dividing the assets 50/50 and awarding the house to Maryna.

In dividing property the trial court must consider the *Merrill* factors, codified at AS 25.24.160(a)(4).[18] Relevant factors concern the length of the marriage;

---

[17](...continued)
court would have assessed her credibility more favorably but for the errors.

[18] *Hooper v. Hooper*, 188 P.3d 681, 686 (Alaska 2008) (citing *Tybus v.* (continued...)

the health, earning capacity, and financial condition of the parties; the conduct of the parties, including whether they have unreasonably depleted marital assets; and the circumstances and necessities of the parties.[19] "While the trial court need not make findings pertaining to each *Merrill* factor, its findings must be sufficient to indicate a factual basis for the conclusion reached. Where the trial court makes these threshold findings, we generally will not reevaluate the merits of the property division."[20] An equal division is presumed to be equitable.[21]

Here, the superior court in its findings of fact explicitly considered the length of the parties' marriage; Kenneth's health, his receipt of disability and other benefits, his anticipated inheritance, his lack of any recent work history, and his current inability to work; Maryna's recent immigration from Belarus, her employment as a janitor, her modest earning capacity, the fact that she was seeking supplemental unemployment insurance and a second job, and her lack of any health problems; the fact that Maryna's earning capacity exceeded Kenneth's "at this time"; and Kenneth's waste of "a number of marital assets following his exit from the marital home." As noted above, the superior court went on to discuss in greater detail its finding that Kenneth had depleted marital assets; it did not, however, explicitly discuss any of the special needs that could arise from Kenneth's disability. It would have been better had the court done

---

[18](...continued)
*Holland*, 989 P.2d 1281, 1286 (Alaska 1999)).

[19]     AS 25.24.160(a)(4).

[20]     *Cartee v. Cartee*, 239 P.3d 707, 713 (Alaska 2010) (footnote omitted) (citing *Nicholson v. Wolfe*, 974 P.2d 417, 422 (Alaska 1999)).

[21]     *Id.* at 712 (citing *Odom v. Odom*, 141 P.3d 324, 339 (Alaska 2006); *Veselsky v. Veselsky*, 113 P.3d 629, 637 (Alaska 2005)).

so, given his claims of dependence on the marital home.[22]  However, we conclude that the superior court made sufficient findings to indicate the factual basis for its decision to divide the property 50/50, and that division — a presumptively equitable one — was therefore not an abuse of discretion.

### C.  The Superior Court Did Not Clearly Err In Its Findings Related To The Mortgage.

Kenneth alleges two errors in the superior court's findings involving the mortgage on the marital home.  He first argues that the court clearly erred in finding that he had not been regularly paying the mortgage.  This finding appears to be irrelevant to the issues on appeal, as the superior court was simply relating the basis for its earlier award to Maryna of interim possession, an issue that was mooted by the final order dividing the property.  In any event, the finding is not clearly erroneous, as the conflict in oral testimony was for the superior court to resolve.  Kenneth testified that Maryna did not make any mortgage payments prior to separation, but Maryna agreed only that Kenneth was always the one who physically made the payments; she testified that she sometimes gave him the money with which to do it.

Kenneth also argues that the court acted arbitrarily in finding that  Maryna was in a better position to pay off the mortgage.  He testified at trial that he could pay off the mortgage with money from an inheritance.  But the superior court's other findings provide support for its conclusion that Maryna was better equipped to pay it off.  First, the court found that Maryna works while Kenneth does not and apparently cannot, and she is seeking to increase her income from various sources. Second, the court found

---

[22]    While the court did find that Kenneth was disabled, it did not say how his disability affected the *Merrill* analysis other than that he received social security and had no reasonable prospects of employment.  Kenneth testified at trial that his disability also made it difficult for him to function outside his home.

based on Kenneth's credit-card debts that he had probably spent any inheritance money he had received. Based on this evidence, the finding that Maryna was better equipped to pay off the mortgage was not clearly erroneous.

**D.** **The Superior Court Did Not Clearly Err In Its Characterization Of The Credit-Card Debts**.

In Kenneth's asset spreadsheets, which were admitted into evidence, he listed credit-card debts to Chase and Wells Fargo totaling approximately $30,000, apparently all in his name alone. He argues that the superior court erred in declining to characterize these debts as marital.

The asset spreadsheets indicated that the credit-card debts were supported by certain exhibits, but Kenneth never moved to admit those exhibits into evidence. In testimony, he asserted that "all of the credit card money went into the [marital] home." Maryna disputed this: she testified that she did not know Kenneth had a credit card with Chase, did not know what he did with it, and had no control over his credit-card spending. She did, however, admit that Kenneth had paid for some furniture with a credit card during the first marriage; that he had a Wells Fargo credit card at the time they took out the mortgage on their first house, during the first marriage; and that (apparently during one of the marriages) there were "multiple debt collectors who called on the phone to him, but he never answered."

The superior court found that the credit-card debt was "not proven to the court's satisfaction." The court noted that Kenneth "was unable to provide specifics concerning the nature of the debt, the dates the debt occurred, or the dates of payments made on the debt," and it also noted Maryna's testimony "that she was not aware of the credit cards or any of the charges that were made."

As Kenneth correctly points out, there is a presumption that debts incurred during marriage are marital,[23] and the fact that one spouse is unaware of the debts is immaterial. "Absent any showing that the parties intended a debt to be separate, the trial court must presume that a debt incurred during the marriage is marital and should consider it when dividing the marital estate."[24] Here, however, the superior court found that there was insufficient evidence to prove the debt itself, including the critical question of whether it had been "incurred during the marriage." Although Kenneth testified generally that all the debt related to the marital home, the only evidence of amounts was the numbers entered on the asset sheets prepared by his attorney. Kenneth apparently had better evidence — the account statements — that may have supported the claimed amounts and may have also shown when the debts were incurred, but he failed to introduce this evidence at trial. And while Maryna conceded that some credit-card debt was incurred during the first marriage, that marriage had been dissolved over five years before trial, and the parties had divorced and spent some time apart before remarrying in 2007. The court was not required to infer, without evidence, that the debts being pursued by creditors during the second marriage were marital debts.[25] The superior court's conclusion that there was insufficient evidence to prove a marital debt is not clearly erroneous.[26]

---

[23]     *Coffland v. Coffland*, 4 P.3d 317, 321 (Alaska 2000) (citing *McGee v. McGee*, 974 P.2d 983, 988-89 (Alaska 1999); *Johns v. Johns*, 945 P.2d 1222, 1225 (Alaska 1997); *Jones v. Jones*, 942 P.2d 1133, 1136 (Alaska 1997)).

[24]     *Id.* at 321-22.

[25]     The court also noted that there was apparently "no property subject to division" at the end of the first marriage.

[26]     *See Fortson v. Fortson*, 131 P.3d 451, 461-62 (Alaska 2006) (affirming finding that parental loans were not "bona fide [marital] debts" based on testimony that

(continued...)

**E.    The Superior Court Did Not Clearly Err In Its Valuation Of The Russian Instruments.**

The superior court assessed $1,000 against Kenneth for the value of items identified in the court's final asset spreadsheet as "Russian instruments," which belonged to Maryna but the court found had been taken by Kenneth. Kenneth contends that this valuation was unsupported by the evidence and, though less clearly, that the court erred in assessing the value against him.

"In general, the opinion of a lay owner as to the value of his or her property is admissible evidence."[27]    Maryna's asset spreadsheet listed "Russian Therapeutic Instruments" as belonging to her and gave them a value of $1,000. She did not testify about the instruments at trial, but her spreadsheet was admitted as Exhibit K.[28] Kenneth's own spreadsheet was introduced as an exhibit at the close of trial, and he expressly endorsed it as representing his preferred distribution of the marital estate. This document also included "Russian Therapeutic Instruments," awarded them to Maryna, and gave them Maryna's value of $1,000.

We considered a similar issue in *Cartee v. Cartee*.[29]    During divorce litigation, a husband submitted several inventory lists giving different values for the same

---

[26](...continued)
the husband had not signed promissory notes and did not consider the loans to be legal debts, that the parents had never demanded payment, and that the parents never asked for interest even though the notes provided for interest).

[27]    *Ethelbah v. Walker*, 225 P.3d 1082, 1092 (Alaska 2009) (citing *Schymanski v. Conventz*, 674 P.2d 281, 286 (Alaska 1983)).

[28]    An amended spreadsheet was later admitted as Exhibit Q. The amended spreadsheet also listed "Russian Therapeutic Instruments" but gave them no value; the item had been moved from the "W[ife] says who gets it" column to the "Disputed Non-Marital" column.

[29]    239 P.3d 707, 710 (Alaska 2010).

guns.[30]  He endorsed his most recent list in his trial testimony, but the trial court instead selected the highest value on the different lists for each of the guns.[31]  We rejected the husband's claim that these findings lacked a sufficient evidentiary basis:  "As the court explained, it valued the guns by selecting from among the values on the lists submitted by Terry himself.  Terry's first three lists, submitted at different phases of discovery, do constitute evidence that the court may properly consider."[32]

The same is true here.  Maryna's property list, admitted as an exhibit, was evidence of value that the superior court was allowed to consider.  There was no testimony contradicting it.  The fact that Kenneth used the same value in his own spreadsheet, which he adopted in his testimony, gave it further credibility.  We cannot say that the court clearly erred in accepting the value of $1,000 for the Russian instruments.

## F.      The Superior Court Did Not Clearly Err In Its Findings That Kenneth Removed Personal Property.

Kenneth argues that the superior court erred in finding that he took a number of Maryna's personal possessions (including the "Russian instruments") and in assessing the value of these missing items against him in its property division.

Kenneth first contests the superior court's determination that "Maryna Stanhope is more credible as to removal of marital property, because Kenneth Stanhope returned to the property after he was no longer permitted access."  Kenneth contends that

---

[30]     *Id.* at 710, 718.  The husband submitted these gun inventories during his initial disclosures, on a handwritten list generated at an unknown time, and on two property spreadsheets, the most recent of which was provided with his trial brief.  *Id.*

[31]     *Id.*

[32]     *Id.* at 719.  *See also Helen S.K. v. Samuel M.K.*, 288 P.3d 463, 471 (Alaska 2012) (relying on husband's listed value of exercise machines instead of wife's testimony).

he had to return to the property because he had left some of his possessions on the property's edge, having no other place to leave them. He also argues that the court should have questioned Maryna's credibility because she misled the court about her need for interim possession, blamed Kenneth unfairly for the poor condition of the house, and treated his dogs inhumanely. But "we will generally accept the determinations of witnesses' credibility that are made by the court as a trier of fact, since the court heard and observed the witnesses first hand."[33] Giving the appropriate deference to the court's determination of this issue, we see no clear error in the finding that Maryna was "more credible as to removal of marital property."

Kenneth next argues that, assuming Maryna's possessions were missing, there was no evidence that he took them. He and Maryna gave conflicting testimony at trial. Kenneth testified that he did not have any of her things. Maryna testified that when she returned to the house after gaining interim possession, pieces of her luggage that she had packed for a planned trip to Belarus were missing, along with a number of her other possessions. While Maryna's accusations against Kenneth were not detailed, she did testify that "he took everything." An appraisal of personal property that Kenneth held in a self-storage unit, which the parties commissioned jointly during a long break in the evidentiary proceedings, failed to account for some non-marital items, including Maryna's Russian instruments. Again giving deference to the superior court's weighing of credibility and its resolution of conflicts in oral testimony,[34] we conclude that it did not clearly err in attributing the loss of some of Maryna's personal property to Kenneth and assessing its value against him.

---

[33]     *Demoski v. New*, 737 P.2d 780, 784 (Alaska 1987) (citing *Curry v. Tucker*, 616 P.2d 8, 12 n.3 (Alaska 1980)).

[34]     *Bigley v. Alaska Psychiatric Inst.*, 208 P.3d 168, 178 (Alaska 2009) (citing *Vezey v. Green*, 171 P.3d 1125, 1128 (Alaska 2007)).

**G.** **The Superior Court Did Not Clearly Err In Finding That The Four-Wheelers Did Not Belong to Kenneth's Son.**

Kenneth takes issue with the superior court's characterization of two four-wheelers as marital property, arguing that they in fact belonged to his son. He and Maryna gave conflicting testimony at trial about the four-wheelers' ownership. Kenneth and a friend of his both testified that they belonged to Kenneth's son, the friend asserting that he had seen a bill of sale for the four-wheelers and that the son had simply left them with Kenneth for him to use. Maryna disputed this, testifying that the four-wheelers were Kenneth's and that she was with him when he purchased them in 2004, during their first marriage. She further testified that the four-wheelers had remained with the household since their purchase and had never been in the son's possession. The court's classification of the four-wheelers as marital property was based on its acceptance of Maryna's testimony over Kenneth's. Given the great deference we grant to a trial court when its "factual findings require weighing the credibility of witnesses and conflicting oral testimony,"[35] we conclude that the superior court did not clearly err in rejecting Kenneth's argument that the four-wheelers belonged to his son.

The court's implicit finding that the four-wheelers were not the son's did not, however, resolve the issue of whether they were marital at the time of the second divorce. This presents a more difficult question, given the superior court's finding that other property that was Kenneth's following the first divorce remained his at the time of the second divorce. Kenneth does not address the issue in his brief, however. His argument assumes that the four-wheelers, if not the son's, were marital. Any other challenge to the court's resolution of this issue is therefore waived.[36]

---

[35] *Id.*

[36] *State, Dep't of Rev., Child Support Enforcement Div. ex rel. P.M. v.*
(continued...)

-17- **6806**

**H.    The Superior Court Did Not Err In Giving Maryna A Half-Credit For Her Post-Separation Mortgage Payment.**

Kenneth disputes the superior court's award of a half-credit to Maryna for post-separation mortgage and utility payments made "while she did not have access to the property." He asserts that Maryna "did not have access to the property for only a small amount of time during this matter" and that any credit should have been limited to that brief period.

When one spouse has made payments to maintain marital property after separation, a trial court is required to make factual findings as to whether a credit is appropriate.[37]  The court did so here.  There is no fixed rule, however, as to whether a credit should be awarded and if so in what amount.[38]  "Instead, the fact that one party has made payments from non-marital income to preserve marital property should be considered as one of the circumstances to be weighed by the trial court in dividing the marital property."[39]

Given the lack of a fixed rule, Kenneth's assertion that the credit must be proportional to the time Maryna lacked access to the property is without support.  In any event, the record shows that the half-credit was roughly proportional, as Maryna lacked

---

[36](...continued)
*Mitchell*, 930 P.2d 1284, 1288 n.8 (Alaska 1997) (failure to brief an issue on appeal waives the issue).

[37]     *Beal v. Beal*, 209 P.3d 1012, 1023 (Alaska 2009) (quoting *Berry v. Berry*, 978 P.2d 93, 96 (Alaska 1999)).

[38]     *Id.*

[39]     *Ramsey v. Ramsey*, 834 P.2d 807, 809 (Alaska 1992).

access to the property for about half the period of separation.[40] The award is not clearly unjust and we will not disturb it on appeal.[41]

I.     **It Was Not Error To Allow Maryna A Year To Make The Equalization Payment.**

Kenneth argues that the superior court's allowance of a year in which Maryna can make the equalization payment is unreasonable because of his limited income and his inability to work. We disagree. Any cash award made as part of a divorce settlement must "not impose a hardship on the paying party."[42] It was not unreasonable to give Maryna a year to make the equalization payment, given the evidence of her earning capacity and the limited assets at her disposal.

V.     **CONCLUSION**

We AFFIRM the superior court's decision.

---

[40]     Maryna lacked access to the house from the separation on December 14, 2010, until June 17, 2011, a period of roughly six months. Kenneth lacked access to the house from June 17, 2011 until the divorce decree was entered on December 27, 2011.

[41]     *See Beal*, 209 P.3d at 1016, 1024 (holding that the award of a full, dollar-for-dollar credit to husband for reduction of the mortgage principal, when he did not live in the marital residence for the duration of the post-separation period, was not clearly unjust).

[42]     *Fortson v. Fortson*, 131 P.3d 451, 459 (Alaska 2006).