*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, e-mail corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MATTHEW RICHTER, | ) | |
| | ) | Supreme Court No. S-15088 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-11-02920 CI |
| v. | ) | |
| | ) | O P I N I O N |
| SHELLEY RICHTER, | ) | |
| | ) | No. 6931 - August 1, 2014 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Vanessa White, Judge.

Appearances: Richard W. Postma, Jr. and Mitchell K. Wyatt, Law Offices of Mitchell K. Wyatt, Anchorage, for Appellant. Elizabeth-Ann Neufeld Smith, Law Offices of Kenneth Goldman, PC, Palmer, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

MAASSEN, Justice.

## I. INTRODUCTION

The superior court granted a divorce to Shelley and Matthew Richter and equitably divided their marital property. Matthew appeals, challenging the court's jurisdiction and its finding that a loan from Matthew's mother was marital debt. We affirm.

## II.    FACTS AND PROCEEDINGS

Shelley Richter (now Sailer) and Matthew Richter married in California in January 2010.  They separated in October 2011, and Shelley filed for divorce.  At the three-day divorce trial in December 2012, Matthew argued that the superior court lacked jurisdiction over him because he is a resident of Idaho.  He contended that he had not resided in Alaska for at least six consecutive months while in a marital relationship with Shelley, as is required by Alaska law before the court can acquire personal jurisdiction over the parties in a divorce action.[1]

Matthew and Shelley are both helicopter pilots, and their work requires frequent travel.  According to Matthew, he moved to Alaska five or six years before trial but "was only there seasonally" until he and Shelley got married, when he began living in Alaska year-round.  At trial he identified Idaho as his residence, but he also testified that he had had an Alaska driver's license for about three years, that he applied twice for an Alaska Permanent Fund Dividend but never qualified, and that he used an Alaska address for his 2010 federal income tax return.  He testified that because he and Shelley both traveled frequently, there was no continuous six-month period of time when they lived together in Alaska during their marriage.

Shelley testified that Matthew rented out his house in Idaho and brought most of his belongings to Alaska shortly after they got married, and that they bought a condo together in Anchorage in April 2010.  She testified that Matthew told her in March 2011 that he wanted to move back to Idaho, but he did not actually leave until October 2011, when they agreed to separate.

---

[1]    *See* AS 09.05.015(a)(12).

After hearing this testimony, the superior court concluded that it had personal jurisdiction over Matthew because "[h]e was a resident [of Alaska] from January of 2010 until at least September of 2011 in a marital relationship and he resided in this state consecutively during that time."

Other issues at trial involved the parties' marital property and debts. Their main disagreement concerned a $100,000 loan from Matthew's mother, Patricia Richter. Shelley entered the marriage with over $100,000 in debt for student loans, bearing a variable interest rate that could go as high as 16 percent. According to Matthew, his mother offered to help Shelley with refinancing the student loan debt and co-signing a new loan at a lower interest rate; he testified that he had no involvement in that transaction. Shelley testified, on the other hand, that Matthew's mother "made $100,000 available to [her and Matthew] to use as investment," which they first considered investing in commercial properties in Girdwood. Shelley testified that "[t]hose properties didn't work out[,] and as we sat there empty handed, not sure what our next move was, we started analyzing our finances and looking at where our liabilities were." Concluding that reducing Shelley's student loan debt was their wisest financial move, they jointly decided to use the $100,000 from Matthew's mother to pay off that debt. Whatever the impetus, Patricia Richter took out a loan from a family trust at about 2.25% interest and wired the money to Matthew and Shelley's joint bank account, from which Shelley paid off her student loans. Repayments to Patricia Richter for the loan were also made from the couple's joint account.

Despite testimony by both Matthew and his mother that the loan was a non-marital transaction solely between Patricia Richter and Shelley, the court credited Shelley's testimony that the parties had incurred the loan as a couple to improve their

overall financial situation and were jointly liable for its repayment. Finding it to be marital debt, the court divided it equally between Shelley and Matthew.

Matthew timely[2] appealed the superior court's rulings on jurisdiction and the marital nature of the $100,000 debt. He also contends that he was denied due process because he went to trial without knowing that it might result in an equitable property division.

## II.    STANDARDS OF REVIEW

We review de novo issues of law, including whether the superior court has subject matter jurisdiction[3] and whether it has personal jurisdiction.[4]

"There are three basic steps in the equitable division of marital assets: (1) deciding what specific property is available for distribution, (2) finding the value of the

---

[2]    Shelley argues in her brief that Matthew's appeal is not timely as to the jurisdiction issue because the appeal was not filed within 30 days of the court's judgment. The final decree and written findings were distributed on January 16, 2013. Matthew had filed motions for reconsideration and for a new trial a day earlier, based on the court's oral decision made on the record on January 2. Matthew's motions terminated the running of the time for appeal. *See* Alaska R. App. P. 204(a)(3). Shelley argues that the motions did not affect the time for appealing the jurisdiction issue because they did not address it. But Rule 204(a)(3) does not extend the time for appealing only those issues that are addressed in post-trial motions; such a rule would needlessly foster piecemeal appeals. Matthew's post-trial motions were denied on February 26, and he timely filed this appeal on March 13.

[3]    *Hawkins v. Attatayuk*, 322 P.3d 891, 894 (Alaska 2014).

[4]    *Vanvelzor v. Vanvelzor*, 219 P.3d 184, 187 (Alaska 2009) (citing *S.B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 61 P.3d 6, 10 (Alaska 2002)).

property, and (3) dividing the property equitably."[5] This appeal concerns only the first step.

"In the first step, '[t]he characterization of property as separate or marital may involve both legal and factual questions.' "[6] We review the "[u]nderlying factual findings as to the parties' intent, actions, and contributions to the marital estate" for clear error.[7] "A finding of fact is clearly erroneous if, upon review of the entire record, we are left with a firm and definite conviction that a mistake has been made."[8] "[W]hether the trial court applied the correct legal rule in exercising its discretion is a question of law that we review de novo using our independent judgment."[9]

## IV.     DISCUSSION

### A.     The Superior Court Had Jurisdiction Over This Divorce Case.

#### 1.     The superior court had subject matter jurisdiction.

Matthew claims that the superior court did not have subject matter jurisdiction over the "personal claims in the divorce." He is incorrect. "Subject matter jurisdiction is 'the legal authority of a court to hear and decide a particular type of case.' "[10] "[W]here the legislature has authorized a court to enter judgment in a

---

[5]     *Beals v. Beals*, 303 P.3d 453, 458 (Alaska 2013).

[6]     *Id*. at 459 (quoting *Odom v. Odom*, 141 P.3d 324, 330 (Alaska 2006)) (alteration in original).

[7]     *Id*.

[8]     *Stanhope v. Stanhope*, 306 P.3d 1282, 1287 (Alaska 2013).

[9]     *Id*. at 1286 (internal quotation marks omitted).

[10]     *Nw. Med. Imaging, Inc. v. State, Dep't of Revenue*, 151 P.3d 434, 438 (Alaska 2006) (quoting ERWIN CHEMERINSKY, FEDERAL JURISDICTION 257 (3d ed.

(continued...)

particular class of cases, the court properly has subject matter jurisdiction."[11]  Alaska Statute 25.24.050 sets out the grounds for divorce, and AS 25.24.160(a) describes what the superior court may include in its judgment in an action for divorce.  These statutes clearly grant the superior court the authority to enter judgment in a divorce action, thereby giving the court subject matter jurisdiction.[12]

### 2.    The superior court had personal jurisdiction.

Alaska Statute 09.05.015(a)(12) grants a court personal jurisdiction over a nonresident party for the personal claims in a divorce action if:

> (A) the parties resided in this state in a marital relationship for not less than six consecutive months within the six years preceding the commencement of the action; (B) the party asserting the personal claim has continued to reside in this state; and (C) the nonresident party receives notice as required by law.

Here, in response to the court's questioning, Matthew confirmed that he lived in Alaska "more or less continuously" for the first eight months of his marriage to Shelley.  He moved most of his belongings to Anchorage, obtained an Alaska driver's license, identified his residence as Alaska for federal tax purposes, and applied for the Permanent Fund Dividend.  He and Shelley together bought an Anchorage condo, which Shelley testified was their "home base."  Although Matthew still owned his house in Idaho, he rented it out during the marriage.  Considering all this evidence, the court did not clearly

---

[10](...continued)
1999)).

[11]    *Id.* (citing *Rodriguez v. Rodriguez*, 908 P.2d 1007, 1011 (Alaska 1995)).

[12]    *Cf. Rodriguez*, 908 P.2d at 1011.

err in finding that Matthew resided in Alaska for more than six consecutive months of the marital relationship.

Matthew reads the statutory phrase "in a marital relationship for not less than six consecutive months" as requiring a couple to have lived under the same roof for that amount of time, a requirement he fails to meet because of his and Shelley's constant travel. But his reading of the statute is unreasonable. If it were accepted, an Alaska court would lack jurisdiction over long-time Alaska couples simply because one spouse travels regularly to Juneau or the North Slope, or because their employment requires that they maintain separate residences and see each other on weekends. The statute simply requires six consecutive months of Alaska residency while in a marital relationship; it does not require that the married couple share a home, let alone that they spend every day together for the required six months. Here, once the superior court found that Matthew had resided in Alaska for six consecutive months during his marital relationship with Shelley, it properly exercised jurisdiction under AS 09.05.015(a)(12).

**B.      The Superior Court Properly Classified The Loan As Marital Debt.**

Matthew argues that the $100,000 debt owed to his mother was Shelley's separate obligation and that the court erred by classifying it as marital and allocating it between them.[13]

In a judgment for divorce, the court may provide "for the division between the parties of their property, . . . whether joint or separate, acquired only during marriage,

---

[13]      Matthew cites to AS 25.15.050, which provides that "neither spouse is liable for the . . . separate debts of the other," and to AS 25.15.100, which allows a married person to make contracts and incur liabilities which can then be enforced "to the same extent and in the same manner as if the person were unmarried." Neither of these statutes is relevant unless the loan is Shelley's separate debt; they do not help determine whether the debt is separate or marital in the first instance.

in a just manner."[14]  Debt incurred during marriage is presumptively marital; the party claiming otherwise must show that the parties intended it to be separate.[15]  "Separate property includes property acquired by one spouse before marriage, property acquired by gift, and property acquired by inheritance."[16]  "Whether an initially nonmarital debt transmutes into a marital liability is a question of intent and acceptance."[17]

Neither party disputes that Shelley's student loan debt was separate debt that she brought to the marriage.  But it is also undisputed that this debt was paid off during the marriage:  Matthew testified that he paid $13,500, expecting Shelley to make up for it by making future mortgage payments and paying other household expenses; and the remaining $100,000 was paid off with the loan from Matthew's mother, Patricia Richter.

---

[14]  AS 25.24.160(a)(4).

[15]  *Stanhope v. Stanhope*, 306 P.3d 1282, 1290 (Alaska 2013); *Beals v. Beals*, 303 P.3d 453, 460 (Alaska 2013) ("Generally, 'all assets acquired by the parties during their marriage are marital property' except for gifts and inheritances.")(quoting *Johns v. Johns*, 945 P.2d 1222, 1225 (Alaska 1997)).

[16]  *Bilbao v. Bilbao*, 205 P.3d 311, 313-14 (Alaska 2009) (citing *Schmitz v. Schmitz*, 88 P.3d 1116, 1127 (Alaska 2004)).

[17]  *Ginn-Williams v. Williams*, 143 P.3d 949, 956 (Alaska 2006).  Matthew claims that *Ginn-Williams* requires this court to conclude that the $100,000 debt was separate.  *Ginn-Williams* held that where property transmuted to marital property, the debt associated with that property must also transmute.  This holding does not apply here because no property transmuted.  The loan from Patricia Richter was incurred during the marriage and was therefore presumptively marital debt.

The loan from Patricia was acquired during the parties' marriage and therefore became presumptively marital debt.[18] It is Matthew's burden to prove it is separate.[19]

The evidence on this issue at trial was conflicting. Matthew denied any involvement with Shelley's student loans "other than paying down the $13,500." He testified that he had no authority to "negotiate or compromise this debt between Shelley and [his] mother." Patricia supported her son's view of the transaction, testifying that she "sent $100,000 to [Shelley's] bank account in the name of Shelley Richter in June 2011," that Matthew did not sign anything related to the loan, and that Matthew was not responsible for the loan in any way — the loan "was only intended to help Shelley."

But the superior court did not find the testimony of Matthew and Patricia credible on this issue. The court credited instead Shelley's testimony that Patricia had offered the couple $100,000 to invest and that after considering and rejecting the idea of buying commercial real estate, they together decided it would make better financial sense to pay off Shelley's high-interest student loan debt. Shelley maintained that she would not have asked Patricia for help but that Matthew wanted to use the money in this way. The money loaned by Patricia was transferred to the couple's joint bank account, and repayments to Patricia on the loan were made from the same joint account. Shelley testified that the amount of the loan would be subtracted from Matthew's inheritance if Patricia died before it was paid off, indicating that she saw the loan as benefitting her son; Patricia testified that she never would have loaned Shelley the money if she had known about the couple's marital difficulties, again indicating that benefit to Matthew was part of Patricia's calculus. The evidence also showed that Patricia only attempted to document

---

[18]     *Stanhope*, 306 P.3d at 1290; *Beals*, 303 P.3d at 460 (quoting *Johns*, 945 P.2d at 1225).

[19]     *Id.  See also Brandal v. Shangin*, 36 P.3d 1188, 1192 (Alaska 2001).

the transaction — drawing up a promissory note between herself and Shelley alone — after she learned that the couple had decided to separate; Shelley refused to sign the note. Given the evidence on both sides of the issue and the great deference we give to a trial court's factual findings when they require "weighing the credibility of witnesses and conflicting oral testimony,"[20] we cannot say the superior court clearly erred when it found that the parties intended the debt to be marital.[21]

Matthew also argues the debt is nonmarital because Shelley incurred it during a period of separation that led to divorce. As a general rule, "property acquired after separation is properly excluded from the category of marital property."[22] Separation occurs when a married couple ceases to function as a single economic unit, which requires a fact-specific inquiry.[23] Here, Patricia Richter loaned Shelley and Matthew the money in June 2011. Matthew is correct that this transaction occurred after he proposed that the parties separate, but the evidence showed that they did not actually do so until October 2011. The debt remains presumptively marital.

Matthew makes a few other arguments challenging the superior court's findings, none of them meritorious. He argues first that the superior court improperly

---

[20]     *Stanhope*, 306 P.3d at 1287 (quoting *Bigley v. Alaska Psychiatric Inst.*, 208 P.3d 168, 178 (Alaska 2009)).

[21]     Matthew separately argues that he was not a party to Shelley's agreement with Patricia and that "a third-party cannot be held liable on a debt for merely helping a debtor make a payment." But these arguments simply restate his central tenet — that the debt to his mother was not incurred by the marital unit — an argument the superior court rejected as a factual matter.

[22]     *Ramsey v. Ramsey*, 834 P.2d 807, 809 (Alaska 1992) (citing *Schanck v. Schanck*, 717 P.2d 1, 3 (Alaska 1986)).

[23]     *Hatten v. Hatten*, 917 P.2d 667, 671 (Alaska 1996).

relied on an unadmitted exhibit, Exhibit 23, in making its oral findings. But after Matthew's attorney pointed this out, the court acknowledged its mistake and stated, "[T]he fact that [Exhibit] 23 is not part of the record doesn't change my ruling. . . . I found [Shelley's] testimony to be highly credible on this point. I did not find Mr. Richter's testimony to be credible. I did not find his mother's testimony to be credible on this point." The testimony on which the court relied was sufficient to support its findings of fact.

Finally, Matthew argues that the debt to his mother is unenforceable because there was no consideration given for it except possibly a promise to Patricia that the couple would have grandchildren, a promise Matthew contends was illusory. But Matthew did not raise this issue before the superior court, and it is therefore waived.[24]

C.    **The Superior Court Did Not Violate Matthew's Due Process Rights.**

Matthew claims that his due process rights were violated because he went to trial believing that Shelley did not intend to ask the court for anything other than a rescission of their relatively short marriage, and he was surprised when she sought an equitable distribution of their marital property. He argues that "because (a) Shelley alleged Matthew was a resident of Idaho and not Alaska [in her complaint]; (b) Matthew agreed that he was an Idaho resident [in his answer]; and (c) Shelley never alleged any set of facts that would invoke the long-arm statute for divorce, Matthew did not have sufficient notice that Shelley would contradict her own pleadings and seek anything more than a *Rose v. Rose*-type rescission of the marriage."[25] Matthew claims that with proper

---

[24]    *Alaska State Emps. Ass'n/AFSCME Local 52, AFL-CIO v. State*, 74 P.3d 881, 886 (Alaska 2003).

[25]    *See Rose v. Rose*, 755 P.2d 1121 (Alaska 1988). Whether to apply a *Rose*-
(continued...)

notice that a property division was contemplated, he would have presented additional evidence proving that the $100,000 loan from his mother was Shelley's separate debt.

Matthew's argument fails for a number of reasons. Most obviously, it is unreasonable to read the complaint's allegation that Matthew was then "a resident of Victor, Idaho," as an affirmative assertion that the superior court therefore lacked jurisdiction over the parties' divorce, particularly given that the complaint was captioned "Complaint for Divorce" and asked the court to adjudicate "[c]ertain property rights and obligations [that] have been acquired and certain debts and obligations [that have been] incurred by the parties during the course of the marriage." And Matthew was clearly on notice that the $100,000 debt would be an issue at trial; he specifically addressed it both in his answer (asserting that he would not agree to a divorce until Shelley had refinanced the loan, which "is her loan, it has nothing to do with my mother and I") and in his trial brief (asserting that the student loans had been refinanced with the help of his mother but that "Matthew did not co-sign the refinance"). Shelley's trial brief listed the loan as a joint obligation of the parties and asked on her property spreadsheet that it be split 50/50. Matthew testified about the loan at trial, cross-examined Shelley on the subject, and presented the supporting testimony of his mother. There is no basis in these facts to conclude that Matthew lacked fair notice that responsibility for the loan was at issue or that he lacked a fair opportunity to litigate it. His claim that he was denied due process is without merit.

---

**25**(...continued)
type rescission remedy rather than make an equitable distribution is left to the court's discretion. *Id.* at 1125 ("stating that the trial court may, without abusing its discretion" treat the divorce as a rescission); *see also Nicholson v. Wolfe*, 974 P.2d 417, 421 (Alaska 1999) ("Since *Rose*, we never have held that it would be clearly unjust to adopt equitable rather than rescission principles.").

## V. CONCLUSION

We AFFIRM the judgment of the superior court.