*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| KYOKO PERRY, ) | |
| ) | Supreme Court No. S-17184 |
| Appellant, ) | |
| ) | Superior Court No. 3AN-17-05581 CI |
| v. ) | |
| ) | O P I N I O N |
| ADAM PERRY, ) | |
| ) | No. 7409 – September 27, 2019 |
| Appellee. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Herman G. Walker, Jr., Judge.

Appearances: Justin R. Eschbacher, Law Offices of G. R. Eschbacher, Anchorage, for Appellant. Brian H. Starr, Anchorage, for Appellee.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

CARNEY, Justice.

## I.     INTRODUCTION

A wife appeals two issues following her divorce. She argues that the superior court erred when it classified a portion of her student loan debt as non-marital. She also argues that the court improperly calculated the parties' income for child support purposes. Because the superior court applied the wrong legal standards to determine whether the student loan debt was marital and to calculate the parties' incomes for child

support purposes, we vacate the superior court's final property distribution and child support orders and remand for the court to conduct the proper legal analysis.

## II. FACTS AND PROCEEDINGS

### A. Facts

Adam Perry and Kyoko Perry married in November 2005 and have two minor children. For the latter part of their marriage, Kyoko handled the couple's finances.

Kyoko continued her education while married, obtaining a bachelor's degree and a master's degree and incurring approximately $84,000 in debt. The superior court found that she incurred $30,500 of the debt for the bachelor's degree and the remaining $53,500 for her master's degree. Adam was aware that Kyoko was attending school and taking out loans to pay for it; it is less clear whether he knew the type of degree or the amount of loans. Kyoko testified that she obtained a master's degree so she could defer her loan payments while Adam was temporarily unemployed. She stated that she feared they could not afford the loan payments while Adam was out of work. Adam decided to leave his job and was temporarily unemployed for a period of 34 days in early 2015, around the same time that Kyoko's student loan payments began.

Adam filed for divorce in March 2017. He and Kyoko continued to live together in the marital home until June 2017, when Adam moved to his father's home. He kept possessions at the marital home for another month and continued to "com[e] and go[] as he pleased" until late August. The children were primarily in Kyoko's physical custody between June and August.

### B. Proceedings

In July 2017 Adam moved for interim child support. In the child support affidavit accompanying his motion, he listed his gross income as $41,884 and Kyoko's as $86,543. He based his calculation on the parties' 2016 W-2s and Permanent Fund

Dividends. Kyoko opposed the motion, but the superior court took no action before the trial.

Trial was held in September. At trial Adam testified that his salary was $52,000 a year. Kyoko testified that she made roughly $4,400 per month and her trial brief listed her salary as $76,000, not including bonuses.

The court issued its initial property division order on January 24, 2018. In it the superior court found that Adam earned approximately $51,000 per year and Kyoko approximately $76,000 per year. The court acknowledged that Adam was aware that Kyoko was in school and incurring debt. The court classified the entire $84,000 student loan debt as a marital debt, but declared Adam responsible only "for half of the $30,500 debt for the first degree." The court appears to have divided the student loan debt unequally because Kyoko "dissipated marital assets" by pursuing her master's degree, apparently not believing she needed to do so when Adam was unemployed for only 34 days.[1] Finally, the court concluded that there was "no reason to deviate from the 50/50 presumption" to divide the marital estate. The court noted, however, that because it had designated the whole student loan debt as marital, there would be "an impact on the marital distribution." To counteract this impact, it would grant Adam "more of the cash assets" and divide the property equally.

The next day the superior court issued an interim child support order, using the draft order and income amounts submitted with Adam's earlier motion — $41,884 for Adam and $86,543 for Kyoko. Instead of using the income amounts in the property

---

[1]     *See Brennan v. Brennan*, 425 P.3d 99, 106 (Alaska 2018) ("An equal division of property is presumptively equitable, but the trial court has broad discretion in this area.") (internal citation omitted); AS 25.24.160(a)(4)(E) (allowing unequal division of property when based on consideration of "the conduct of the parties, including whether there has been unreasonable depletion of marital assets").

division order issued a day earlier, the superior court relied upon the amounts in the parties' 2016 W-2s, which were roughly $10,000 less for Adam and roughly $10,000 more for Kyoko.

Both parties then filed motions to reconsider. Adam's motion sought reconsideration of the property division based on the court's inconsistent treatment of the student loan debt, stating that the court contradicted itself by declaring the whole debt as marital but only treating $30,500 as marital. Kyoko also objected to the court's treatment of the student loan debt and argued in addition that it had used incorrect income figures to calculate child support in the interim order. She argued that the court should have used the amounts in its property division order, which were based upon more current evidence from trial. She attached a proposed child support order to her motion, using the income figures in the property division order, and estimating adjusted incomes of $43,223.60 for Adam and $48,474.96 for Kyoko.[2]

The superior court held a status hearing on the motions to reconsider in February 2018. During the hearing the court advised the parties of its intent to rely on the child support calculations in Kyoko's motion to reconsider unless Adam objected. Adam conceded during the hearing that he received a promotion in 2017, confirming that his salary was roughly $51,000 a year.

The superior court issued an amended property distribution order following the hearing. The amended order stated that the superior court was correcting its "error

---

[2]     *See* Alaska R. Civ. P. 90.3(a)(1) (defining adjusted annual income for child support purposes as "parent's total income from all sources minus" certain listed deductions). Kyoko attached a child support calculation using an online child support calculator provided by the Child Support Services Division to enable parents to estimate the appropriate amount. She used annual wages of $76,000 for herself but estimated a monthly deduction of $2,385.42 (totaling $28,625.04 a year), adjusting her annual income to $48,474.96.

regarding identifying the student loan debt as marital." To correct the error, the amended order instead stated: "Based upon the testimony at trial[,] the court finds that it was not the intent of the parties to make the whole student loan debt marital, just the loan acquired for the bachelor's degree."

Adam did not file an objection to Kyoko's income figures after the status hearing. Kyoko again moved for reconsideration, arguing that the amended property distribution order erroneously classified a portion of the student loan debt as non-marital and, because Adam had not objected, requesting that the court enter an amended child support order based on her calculations. A week and a half later Adam objected to Kyoko's request, claiming her proposed child support order "was not prepared using the correct legal standard and should be rejected." Kyoko responded that her income figures were not contested at trial and that Adam had acknowledged at the status hearing that his income was $51,000.

In April the superior court denied Kyoko's motion to reconsider and her request for an amended child support order. Again addressing the student loan debt, the court stated that it "considered all the testimony at trial, judged the credibility of the parties and came to its determination that not all the student loan [was] marital." In response to the request for an amended child support order, the court stated that its income findings from trial of $51,000 for Adam and $76,000 for Kyoko were only for its property division and that it would rely on the parties' 2017 W-2s for its child support calculation. The 2017 W-2s listed Adam's income as $46,230.10 and Kyoko's income as $79,167.01.

Later that month Kyoko filed a Notice of Filing Income Information and Child Support Position, documenting her income and calculating child support based on an extrapolation of Adam's income from a January 2018 pay stub and his testimony at

trial. Adam objected and noted the superior court's "crystal-clear directive" that it would base child support on the parties' 2017 W-2s instead of its findings from trial.

The court entered a final child support order on July 5, 2018, based only on the income in their 2017 W-2s and Permanent Fund Dividends. On July 11 it entered the final decree of divorce, incorporating its custody order and most recent child support and property division orders *nunc pro tunc* to September 18, 2017.

Kyoko appeals the superior court's treatment of the student loan debt and the calculation of child support.

## III.    STANDARD OF REVIEW

A court must take three steps when equitably dividing marital assets upon divorce: "(1) determin[e] what property is available for distribution, (2) find[] the value of the property, and (3) divid[e] the property equitably."[3] We generally review the first step for clear error because it involves questions of fact.[4] "Underlying factual findings as to the parties' intent, actions, and contributions to the marital estate are factual questions."[5] However, "whether the trial court applied the correct legal rule . . . is a question of law that we review de novo using our independent judgment."[6]

---

[3]     *Wagner v. Wagner*, 386 P.3d 1249, 1251 (Alaska 2017) (quoting *Limeres v. Limeres*, 320 P.3d 291, 296 (Alaska 2014)).

[4]     *Id.*

[5]     *Grove v. Grove*, 400 P.3d 109, 112 (Alaska 2017) (quoting *Beals v. Beals*, 303 P.3d 453, 459 (Alaska 2013)).

[6]     *Id.* (omission in original) (quoting *Beals*, 303 P.3d at 459).

We will "reverse child support awards only if the superior court abused its discretion, applied an incorrect legal standard, or clearly erred in its factual findings."[7] We "review the superior court's factual findings regarding a party's income for purposes of calculating child support for clear error."[8] But we review "[w]hether the superior court applied the correct legal standard to its child support determination . . . de novo."[9]

## IV. DISCUSSION

### A. It Was Error To Characterize A Portion Of The Student Loan Debt As Separate Debt.

Kyoko argues that the superior court erred by characterizing a portion of her student loan debt as non-marital because there was no evidence that the parties intended this debt to be separate from the marital estate. She contends that Adam's apparent "ignorance or . . . lack of full understanding of the debt" does not defeat the presumption that the debt incurred during the marriage is marital debt and that "[a] party in a divorce should not be able to assert ignorance of a marital obligation on one hand while acknowledging he agreed to give the other party the authority to make these decisions on the other." Adam responds by arguing that if the parties "intended the debt to be marital then [Kyoko] would have secured [his] agreement or at minimum made him aware of her decision."

As Kyoko correctly notes, "[d]ebt incurred during marriage is presumptively marital; the party claiming otherwise must show that the parties intended

---

[7] *Holmes v. Holmes*, 414 P.3d 662, 666 (Alaska 2018).

[8] *Farr v. Little*, 411 P.3d 630, 634 (Alaska 2018) (quoting *Limeres*, 320 P.3d at 295).

[9] *Id.* (quoting *Limeres*, 320 P.3d at 295).

it to be separate."[10]  This presumption applies even when "one spouse is unaware of the debts."[11]  "Absent any showing that the parties intended a debt to be separate, the trial court must presume that a debt incurred during the marriage is marital and should consider it when dividing the marital estate."[12]

In its amended property distribution order the superior court found "that it was not the intent of the parties to make the whole student loan debt marital, just the loan acquired for the bachelor's degree."  It based its conclusion on the fact that Adam had only "agreed to pay for the first degree, whether that was an associate or bachelor['s] degree."  The court also referred to its finding that Kyoko was not credible in her testimony that she obtained her graduate degree only to defer her loan payments during Adam's unemployment; it noted that Adam was unemployed for only 34 days and Kyoko "did not have to continue her degree program once [he] started working."

But the superior court upended the presumption regarding debts incurred during a marriage.  After correctly stating that debt incurred during the marriage is marital unless the parties intended it to be separate, the superior court began its analysis of the student loan debt by presuming it was Kyoko's alone unless Adam agreed to it. The court concluded that because Adam expressly agreed only to incur debt toward Kyoko's bachelor's degree, they had not intended to make the master's degree debt marital.  But this conclusion switches the presumption that all debt is marital:  unless Adam was able to prove that the parties intended to make the debt *separate*, the court was required to presume the debt was *marital*.  Here it did the opposite:  the superior

---

[10]     *Richter v. Richter*, 330 P.3d 934, 938 (Alaska 2014).

[11]     *Stanhope v. Stanhope*, 306 P.3d 1282, 1290 (Alaska 2013).

[12]     *Id.* (quoting *Coffland v. Coffland*, 4 P.3d 317, 321-22 (Alaska 2000)).

court presumed the debt was separate because one of the parties did not expressly agree that it was marital.[13]

It was error to treat a portion of the student loan debt as separate from the marital estate. We therefore vacate the property distribution order and remand for the superior court to determine the proper distribution of the marital estate, including the entire student loan debt.

**B.      It Was Error To Rely Upon Only The Parties' 2017 W-2s To Determine Income For Child Support Purposes.**

Kyoko argues that the superior court erred because it failed to use the incomes determined at trial and in its property distribution order when it calculated child support. Adam responds that using the 2017 W-2s was appropriate and that the superior court properly conducted a child support calculation pursuant to Alaska Civil Rule 90.3.

The first step in determining child support is to calculate a "parent's total income from all sources."[14] "The ultimate goal of a support determination is to arrive at an income figure reflective of economic reality."[15] To achieve this, "[t]he court must examine all available evidence to make the best possible calculation,"[16] and "take all evidence necessary to accurately reflect the parties' economic reality."[17]

---

[13]      *See Schaeffer-Mathis v. Mathis*, 407 P.3d 485, 495 (Alaska 2017) ("[Husband] erroneously argu[ed] that [wife] had to prove that they intended the debt to be marital.").

[14]      Alaska R. Civ. P. 90.3(a)(1).

[15]      *Farr v. Little*, 411 P.3d 630, 635 (Alaska 2018) (internal quotations omitted) (quoting *McDonald v. Trihub*, 173 P.3d 416, 427 (Alaska 2007)).

[16]      Alaska R. Civ. P. 90.3 cmt. III.E.

[17]      *Wilhour v. Wilhour*, 308 P.3d 884, 889 (Alaska 2013) (quoting *Routh v.*
(continued...)

The superior court relied only on the parties' 2017 W-2s to determine their income for child support calculations. It did not take into account any of the contrary or more recent evidence before it: Adam's trial testimony that he makes $52,000 a year; his assertion from the status hearing that he had received a promotion in 2017 and his acknowledgment that he made roughly $51,000 a year; or his January 2018 pay stub; all of which indicated a higher salary than his 2017 W-2. We have previously approved the use of W-2s to determine income for child support purposes, but it has always been *in conjunction with* other evidence.[18] But here the superior court used the parties' 2017 W-2s to the exclusion of other and more recent evidence without explaining its decision to do so. It acknowledged Adam's trial testimony regarding his income and his assertion that he received a raise in 2017 at the status hearing and indicated its intent to rely upon this evidence to calculate child support unless Adam objected. Yet the superior court then ignored that evidence and, without explanation, instead based its child support order on only the parties' 2017 W-2s.

While it may not have been error to rely on the parties' 2017 W-2s, it was error to rely *only* on their 2017 W-2s when the other available evidence was to the

---

[17]    (...continued)
*Andreassen*, 19 P.3d 593, 595 (Alaska 2001)).

[18]    *See, e.g.*, *Ward v. Urling*, 167 P.3d 48, 54 (Alaska 2007) ("Relying on [the party's W-2s from 2001 through 2005, her pay stubs from recent pay periods, and copies of her unemployment checks], the court was able to reasonably assess Urling's income for the purposes of computing her support obligation."); *Bays v. Bays*, 807 P.2d 482, 486-87 (Alaska 1991) (affirming superior court's income calculation when it was based on party's W-2 in conjunction with his testimony); *see also Azzam v. Azzam*, No. S-16738, 2018 WL 5028369, at *6 (Alaska 2018) ("[T]he court did not err in deeming Walid's 2016 W-2 — in conjunction with his 2015 tax return and his testimony — sufficient to establish his income for purposes of Alaska Civil Rule 90.3.").

contrary and more recent. Accordingly, we vacate the superior court's final child support order and remand for the court to properly calculate the parties' incomes.

**C.      We Will Not Consider Adam's Argument That The Superior Court Erred By Making The Child Support Order Retroactive.**

Alaska Appellate Rule 204(a)(1) requires notice of appeal to be filed within 30 days of the judgment. Rule 204(a)(2) allows a party to file a cross-appeal if it is filed within 14 days of a timely filed notice of appeal by any other party or within 30 days of the judgment, whichever is later. Adam filed neither an appeal nor a cross-appeal; he first raised the issue of whether the superior court erred by making the child support order retroactive in his Appellee's Brief, filed eight months after the final child support order was entered and seven months after Kyoko timely filed her notice of appeal. Adam therefore failed to properly raise the issue. Because he failed to properly appeal the issue, we will not consider it.[19]

## V.      CONCLUSION

Because it was error to treat portions of the student loan debt as separate property and to calculate income for child support based only on the parties' 2017 W-2s, we VACATE the final property distribution order and final child support order and REMAND for the superior court to conduct the proper legal analysis.

---

[19]      *See Shumway v. Betty Black Living Trust*, 321 P.3d 372, 375-76 (Alaska 2014) (declining to consider issue on appeal when it was not timely raised in notice of appeal pursuant to Appellate Rule 204(a)(1)).